## Lentz, McIntyre & Lentz *versus* Choteau.

*Damages for Loss of Profits under a Contract, when recoverable.*

1. To recover damages for the loss of profits, resulting from a breach of contract, the plaintiffs must prove not only that they had been prevented from performing it by the default of the defendant, but also that they have sustained actual loss thereby.

2. Where, in an action for damages for breach of contract, there was no evidence that the plaintiffs had suffered any loss by being prevented from going on with their contract, or any that would have been a guide to an estimate of profits, it is not error for the court to instruct the jury that there was "no evidence on which such damages could be estimated."

ERROR to the Common Pleas of *Lehigh county*.

This was a foreign attachment in case by John Lentz, Robert McIntyre, and Lafayette Lentz, partners as Lentz, McIntyre & Lentz, against Pierre Choteau, Jr., with *scire facias* to the Allentown Railroad Company, Daniel Tyler and others, as garnishees of the defendant.

The plaintiffs declared first on a special agreement dated on the 15th August 1857, between the parties, whereby plaintiffs agreed to make and construct sections No. 5, 6, 11, and 13, of the Allentown Railroad, according to certain specifications and conditions, and under the direction of the engineer of said road, and complete the same within twelve months, at certain specified prices per cubic yard for each description of work, viz., for excavation of earth, clay, gravel, and detached stone, 18¾ cents; for solid rock, 54 cents; for loose rock or shale, 34 cents; for side cutting and side ditching, including depositing of same in embankment, 18¾ cents; for bridge masonry in abutments, rock work not ranged, $4; for same, ranged, $5; for bridge masonry in piers, rock work ranged, $6; for bridge arching, selected hammer-dressed ring stone, $8; for ranged rubble work, laid in cement, $4; for ranged rock work masonry laid in cement, $5.50; for culvert arching in cement, $8; for dry stone drains, hammer-dressed faces, $3; for brick work in cement, small culverts, $8; for paving and slope walling, $1; for rip-raps, 50 cents.

That payments should be made during the progress of the work on monthly estimates of the engineer, after deducting a certain percentage, which, together with any other amount due upon said work, should be paid at the completion on final estimate; and also setting forth other usual stipulations for the control and direction of the work during its progress by the engineer in charge, as well as by the chief engineer. That plaintiffs, in pursuance of said agreement, prepared for and commenced said work, and provided a large number of shanties, horses, carts, crow-bars, shovels, picks, &c., necessary to prosecute said work at a large expense and outlay, to wit, $10,000, and did a great

amount of work upon said sections at an expense and outlay of $10,000, until the 15th September 1857, and were ready and willing to complete the same, when they were commanded by said defendant to desist from said work, and by him prevented from completing the same. That by reason of said work done, and the said prevention by said defendant, and the depreciation and uselessness of said shanties, horses, carts, implements, &c., said plaintiffs sustain damages to the amount of $20,000.

The second count set forth a similar contract on the 5th day of June 1857, for the construction and completion of section No. 39 of the same railroad, at prices varying somewhat from those in the first count, but with the same stipulations as to the mode and time of payment and the contract and direction of the engineer, and then proceeded to set forth specific expenditures for shanties, horses, carts, implements, &c., necessary for carrying on and completing said work; and the commencement and partial construction of the same with the cost thereof and a readiness to finish it, with a similar statement of damages.

The third count set forth a similar contract for construction and completion of section No. 12, with the prices for each description of work varying somewhat from those of the other sections; similar purchase of shanties, horses, carts, implements, &c., necessary for completion of said work; the commencement and partial completion, and the cost thereof, with a readiness to finish the same; a similar prevention by the defendant, and a similar averment of damages.

The fourth count set forth a contract between the parties on the 15th June 1857, whereby plaintiffs agreed to construct a large portion of said railroad upon certain terms, conditions, and prices enumerated and contained in certain writings which are in possession of defendant, and therefore not particularly set forth; that plaintiffs in pursuance of said contract provided shanties, horses, harness, carts, materials, implements, &c., necessary for completing said work, and prosecuted the same until 15th September 1857, and were ready and willing to complete the same according to the said contract, but were prevented from doing so by said defendant; and that by means thereof they have lost the profits which they would have acquired from the fulfilment of said contract and the completion of said work.

The remaining counts were for money paid, laid out, and expended; for money had and received; for work and labour done and materials found, provided, and applied; goods sold and delivered; and account stated.

To which the defendant pleaded *non assumpsit*.

On the trial, it appeared that, in the month of June 1857, plaintiffs had submitted bids for work on sections 5, 6, 11, 12, 13, and 39, of the Allentown Railroad, specifying prices for cer-

[Lentz *et al. v.* Choteau.]

tain designated kinds of work, excavation, masonry, &c., offer-
ing to do the work according to the specification and form of
contract exhibited at the bidding, and agreeing to enter into and
execute a contract in said form at the prices designated as afore-
said.    That the bids were accepted by Daniel Tyler, the agent
of the defendant.    And that three several forms of contract,
which by their terms were to be executed in duplicate, dated
July 1st 1857, were signed by plaintiffs, and produced by defend-
ant without the signature of defendant.    One form of contract
thus signed stipulated for work on sections 5, 6, 11, and 13; a
second for work on section 12; and a third for work on section
39.    That in pursuance of bids, plaintiffs commenced work on
section 6 about June 10th 1857; on section 5 about the 20th of
June; on section 11 in the month of August; and on section 12
in the month of September of the same year.    That on com-
mencing work, plaintiffs were required to make heavy outlays on
the different sections in erecting shanties, purchasing horses,
carts, harness, and implements of labour for excavation, &c.
That the work progressed until about the 5th of October 1857,
when plaintiffs were required by defendant to suspend the work.
Partial payments for the work done had been made by defendant
to September 1st 1857.    The plaintiffs claimed to recover the
balance due on the work actually done, according to prices
designated in the bids and contracts, and the damages to which
plaintiffs would be entitled arising from their not being allowed
to finish the work according to the bids and contracts, after a
large outlay necessary to the completion of the work.    The loss
of profits sustained in consequence of such prevention of per-
formance was claimed by plaintiffs as one of the items in such
damages.

The court below (FINDLAY, P. J.), after stating the facts and
general principles of law governing such contracts, added:—

" The plaintiffs, however, in addition to the amount of the
work done by them, also claim damages for the profits they would
have made by the completion of the contract.    A plaintiff is
entitled to damages for the loss of his contract when he is pre-
vented from performing it by the default of the defendant.    But
in this case the plaintiffs have given no evidence on which such
damages can be estimated."

There was a verdict and judgment in favour of plaintiffs for
$6822.63, the sum due for work done according to the evidence.
Whereupon the plaintiffs sued out this writ, and assigned for error
that portion of the charge of the court below which relates to the
plaintiffs' claim for damages for loss of anticipated profits.

*John H. Oliver* and *A. H. Reeder*, for plaintiffs in error.

[Lentz *et al. v.* Choteau.]

*John D. Stiles* and *R. E. Wright,* for defendant in error.

The opinion of the court was delivered, April 21st 1862, by
STRONG, J.—The court below instructed the jury that damages
for the loss of a contract may be recovered when a plaintiff has
been prevented from performing it by the default of the defend-
ant ; but the learned judge added, the plaintiffs in this case had
given no evidence on which such damages could be estimated.
Herein, it is alleged, there was error.

We have carefully examined the whole evidence returned with
the record, and have failed to discover any which can be regarded
as tending to show that the plaintiffs would have made any profits
had they been permitted to go on and complete the work which
they contracted to do.     Much less is there any which could have
been a guide to an estimate of profits.     The contract was an
entirety.     It required of the plaintiffs earth excavation, solid and
loose rock excavation, ditching, rubble masonry, range masonry,
embankment, brick work ; in fact, no less than sixteen different
kinds of work, for each of which there was a stipulated price.
Under such a contract it is obvious, that to determine whether
any profit could have been made had the work all been done, it
is necessary to ascertain not only the amount of each kind of
work, but the cost of doing it.     We obtain nothing of value, if
we determine that the solid rock excavation, standing by itself,
would have yielded a profit.     That may be, and yet the contract
have been worth nothing.     The other kinds of work which the
plaintiffs were equally bound to do, might have involved a loss,
much greater in amount than all which could have been made
upon the rock work.     Now, a plaintiff who claims damages for
the loss of a contract, is as much bound to prove that he has
sustained damages, as he is to prove the contract itself.     The
jury cannot be asked to guess.     They are to try the case upon
evidence, not upon conjecture.     The right to recover nominal
damages may be complete when it is shown that any damages
have been sustained ; but if more is asked, there must be a proof
of more.     If, then, as we think, there was no evidence that the
plaintiffs had suffered any loss in being prevented from going on
with their contract, it was not error to say that there was nothing
by which a jury could estimate such a loss.

Judgment affirmed.