Harry C. Rightmire *v.* Emil Hirner, Amandas F. Henninger and William Jacobs, trading as the Excelsior Knitting Machine Co., Appellants.

*Master and servant—Breach of contract—Wages—Commissions—Measure of damages.*

In an action to recover damages for an alleged breach of a contract of employment to sell machines on commission where it appears that at the time of the alleged breach the contract had three years to run, but defendants were not bound to furnish any definite number of machines, and could practically terminate the contract at any time by ceasing to manufacture them, the measure of damages is not the profit which plaintiff would have made on his contract, but the value of the contract at the time of breach; and in considering the value, the jury must bear in mind that the defendants were not obliged to furnish any specified number of machines, or even to continue their manufacture; that the plaintiff's rights under his contract were subject to the contingencies of business and depression of trade, which might tend to reduce the sales; and in estimating the damages consequent upon the loss of the contract, the jury must take into consideration what the plaintiff probably could earn in some other employment or occupation during the time which the contract had to run.

Argued Jan. 17, 1898. Appeal, No. 277, Jan. T., 1897, by defendants, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1895, No. 396, on verdict for plaintiff. Before GREEN, WILLIAMS, McCollum, MITCHELL and DEAN, JJ. Reversed.

Assumpsit for an alleged breach of contract of employment. Before BRÉGY, J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

[This contract had practically three years to run, and if they deprived him of that benefit they ought to pay what that contract was worth, and that is the profit which he would have gotten out of it. If a man takes a contract to build a house for $10,000, at a profit of $2,000, and the man who is having the house built afterwards changes his mind, and says, "I will not let you go on with it," he is not entitled to $10,000, because he didn't build the house, but he is entitled to $2,000, the profit that he would have made if he had been allowed to finish it, if that can be ascertained in actual figures.

So here, if that man was deprived of doing that which the contract gave him the right to do,—in other words, if the defendants broke the contract and prevented the plaintiff from making the money he would have made if he had gone and carried out his contract, they must make it up to him, and what that was worth you ought to give him by your verdict. In other words, what was the money value to the plaintiff of the contract if he had been allowed to carry it on for the three remaining years, and if he is entitled to anything that is what he is entitled to.] [1]

Defendants' points and the answers thereto among others were as follows:

5. The fact that Rightmire advertised himself as sole selling agent, and, in fact, did for a time, as the agent of the defendants, continue to sell the three-quarter automatic excelsior knitting machine, does not of itself tend to establish that Rightmire was selling the three-quarter automatic machine under the contract of October 28, 1893. *Answer:* Refused. [2]

6. It appears from the admissions of the plaintiff that while he was in the employment of the defendants he received from Austin, the seller of needle-cylinders, a commission of one half cent per bar upon all the needle-cylinders sold by Austin to the defendants; this action of the plaintiff was in fraud of his duty to the defendants, and he cannot recover damages for an alleged breach of contract on the part of defendants in refusing to continue him as selling agent, even though the contract of October 28, 1893, should be held to apply to the three-quarter automatic machines. *Answer:* Refused. [3]

7. The fact that the three-quarter automatic machines may have contained a cam-cylinder similar to that contained in the semi-automatic machine does not bring that machine within the operation of the contract of October 28, 1893, in view of admitted difference in the method and cost of construction. *Answer:* Refused. [4]

8. If the plaintiff is entitled to any damages for breach of contract, the measure of the damage is the value of the contract at the time of breach, and in considering the value the jury must bear in mind that the defendants were not obliged to furnish any specified number of machines, or even continue their manufacture; the plaintiff's rights under his contract were

subject to the contingencies of business, depression of trade, which might tend to reduce the sales, and in estimating the damages consequent upon the loss of the contract, the jury must take into consideration what the plaintiff probably could earn in some other employment or occupation during the period during which the contract ran. *Answer:* Refused. [5]

10. There is no evidence in the case which justifies the jury in finding, that at the time of suit brought the defendants owed him any commissions for machines sold under the contract. *Answer:* Refused. [6]

11. Under all the evidence in the case, the verdict should be for the defendants. *Answer:* Refused. [7]

Verdict and judgment for plaintiff for $10,000. Defendants appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*Preston K. Erdman* and *Richard C. Dale,* with them *Edward Harvey,* for appellants.—From the evidence the jury could not determine the profit plaintiff would have earned. It was purely speculative. The jury could only guess: Lentz v. Choteau, 42 Pa. 435.

Under the circumstances the estimated profits are merely speculative, and do not constitute the measure of damages. Estimated profits can only be awarded where the profits are not probable but certain: Van Ness v. Fisher, 5 Lansing, 240; Reiter v. Morton, 96 Pa. 229; Chamberlin v. Morgan, 68 Pa. 168; King v. Steiren, 44 Pa. 99.

The plaintiff having elected to sue in advance of the expiration of his contract, it is impossible for defendants to show affirmatively his other employment: Wolf v. Studebaker, 65 Pa. 459.

*A. T. Freedley,* with him *Francis T. Chambers,* for appellee, cited as to the measure of damages, Wolf v. Studebaker, 65 Pa. 460; Hoy v. Gronoble, 34 Pa. 10; Nixon v. Myers, 141 Pa. 477; McDowell's App., 123 Pa. 410; Garsed v. Turner, 71 Pa. 56; Feigel v. Latour, 1 W. N. C. 335; Reynolds v. Poindexter, 1 Phila. 179; Wicker v. Hoppock, 6 Wallace, 99; Morris v. Parham, 4 Phila. 63; Reiter v. Morton, 96 Pa. 229;

Brewing Co. v. McCann, 118 Pa. 321; Lentz v. Choteau, 42 Pa. 435; Emery v. Steckel, 126 Pa. 171.

OPINION BY MR. JUSTICE DEAN, November 7, 1898:

On October 28, 1893, plaintiff and defendants entered into a written contract by which plaintiff was appointed sole agent of defendants in the United States and Canada for the sale of the " Excelsior Automatic and Semi-Automatic Knitting Machine," manufactured by them; sales to be made according to list prices furnished by the company, subject to its revision at any time; payments to be made to the company at its office; the contract to continue for five years, and then to be renewed if the relation proved satisfactory; Rightmire to have as compensation twenty per cent on all sales made by him, to be paid as the company received payment from the purchasers. In the autumn of 1894, defendants, by certain improvements and additions, particularly by a patent needle picking device, had commenced the construction and sale of a new machine, which they called " Excelsior Three-Quarter Automatic Knitting Machine." As to the new machine, defendants denied that it was embraced in the contract already noticed; although they, up to July 1, 1895, permitted plaintiff to sell it, at the same time denying, in writing to him, his right to do so. There was evidence on part of defendants tending to show that plaintiff did not claim any contract right to make these last sales, and that it was in contemplation by both parties to make a new contract covering the new machines. This, however, was not done. On June 24, 1895, plaintiff wrote defendants a letter, making a large additional claim for compensation on account of needle cylinders sold and other services, whereupon they forbade him selling any other machines than those specified in the written contract. There was some evidence tending to show that plaintiff had a secret interest with a party named " Austin Brothers " to furnish defendants with needle cylinders, and that afterwards, through his solicitation, without disclosing his interest, he induced defendants to buy the cylinders from Austin Brothers, receiving compensation from the latter, and then his commissions on resale for defendants.

The plaintiff alleged a breach of the contract by defendants in refusing to permit him to sell the new or improved machine,

averring that it was substantially the same as that embraced in the written contract. He, therefore, brought suit for damages. At the trial, the question of fact on which hinged the verdict was, whether the new machine, notwithstanding the change of name, was practically the old one. If the jury answered this in favor of plaintiff, then the next question was, to what damages was he entitled by reason of defendants' breach of a contract which had yet about three years to run? Both questions were submitted to the jury, who found for plaintiff a verdict for $10,000, on which judgment was entered, and we have this appeal by defendants, who assign nine errors. The first and fifth complain of the instruction as to the measure of damages, and seem to us the most important. The learned judge said to the jury: "This contract had practically three years to run, and if they deprived him of that benefit they ought to pay what that contract is worth, and that is the profit which he would have gotten out of it." This, it seems to us, in view of this contract and the character of the alleged breach left open a very wide door for speculation on part of the jury. For example, plaintiff testified that the year before defendants had violated the contract the net profits earned by him under it were $4,000; that his gross commissions were $5,249. He admitted that he kept no books, and that out of this sum came his traveling expenses, advertising, office rent, showroom, bookkeeper, and operator of machines. He admitted that his traveling expenses alone averaged about $18.00 per week, making at once a deduction of nearly $1,000. As to the other expenses necessary to the successful prosecution of his agency, it was of the most vague and unsatisfactory character. Then, was the very important fact that plaintiff was an active, pushing sales agent, who not only could engage successfully in other business, but was bound to do so when his contract with defendants was at an end; nevertheless, the jury have fixed his damages at $10,000, apparently, on the assumption, that he could be idle for that time, yet be as well off as if industriously engaged in selling knitting machines throughout the United States and Canada. As is said by STRONG, J., in Lentz v. Choteau, 42 Pa. 435: "Now a plaintiff who claims damages for the loss of a contract is as much bound to prove that he sustained damages as to prove the contract itself. The jury cannot be asked to guess. They are to

try the case upon evidence, not upon conjecture." Under the contract and evidence in this case the correct measure of damages is that stated in defendants' eighth prayer for instructions, which was denied by the court, but ought to have been unqualifiedly affirmed, thus: "If the plaintiff is entitled to any damages for breach of contract, the measure of the damage is the value of the contract at the time of breach, and in considering the value the jury must bear in mind that the defendants were not obliged to furnish any specified number of machines, or even to continue their manufacture; the plaintiff's rights under his contract were subject to the contingencies of business, depression of trade, which might tend to reduce the sales, and in estimating the damages consequent upon the loss of the contract the jury must take into consideration what the plaintiff probably could earn in some other employment or occupation during the period during which the contract ran."

There is nothing of merit in the other assignments of error, but because of the one discussed, the judgment is reversed, and a v. f. d. n. awarded.