## MEASURE OF DAMAGES FOR BREACH OF CONTRACT TO TAKE FIRE INSURANCE.

Circuit Court of Cuyahoga County.

C. H. PRESCOTT, JR., ET AL V. HARRY KOBLITZ.[*]

Decided, February 16, 1903.

*Evidence—Inspection Bureau Rate of Insurance Not Admissible to Prove Average Rate in Force on Certain Class of Property—Damages for Breach of Executory Contract is Present Valnue of the Contract.*

1. In an action by an insurance agent for damages resulting from the breach of a contract, in which it had been agreed that the agent should furnish the other party to the contract insurance at a rate not exceeding the average rate paid by other lumber firms of the same city for a like hazardous risk, evidence by the officers of an inspection bureau as to the rate which they placed upon the property upon which the plaintiff had tendered insurance, is not competent to prove that the tendered insurance was at the rate specified in the contract, even though the rates fixed by the bureau were sold to, and used by, a large percentage of the insurance agencies of the community.

2. Where a contract between an insurance agent and a property owner provided that the property owner should take all his insurance from the agent and withhold 20 per cent. of the premiums as they became due and apply them as payment upon a certain piece of property which was to be conveyed to the agent at an agreed price, a breach having occurred at the inception of the contract through the refusal of the property owner to take any insurance, the measure of damages is not the value of the property to be conveyed, but the value of the contract to the agent at the date of the breach, in estimating which the jury should consider the probability of the defendants going out of business, and what would have been necessary on the part of plaintiff had he performed his contract.

*Hessenmueller & Bemis,* for plaintiffs in error.
*Ford, Snyder, Henry & McGraw,* contra.

MARVIN, J.; WINCH, J., and HALE, J., concur.

*Affirmed without opinion, Koblitz v. Prescott et al, 71 Ohio State, 546.

Error to the court of common pleas.

. The defendant in error brought a suit against the plaintiff in error, to-wit, C. H. Prescott, G. A. Prescott and C. H. Prescott, Jr., partners doing business under the firm name of the Saginaw Bay Company, and recovered a judgment, to reverse which the present proceeding is brought. The suit grew out of the following state of facts:

On the 19th day of September, 1899, a contract in writing was entered between the Saginaw Bay Company as party of the first part and Harry Koblitz as party of the second part, which contract reads as follows:

"This agreement made this 19th day of September, 1899, by and between the Saginaw Bay Co., party of the first part, and Harry Koblitz, party of the second part. Witnesseth:

"That whereas the party of the first part is now engaged in the lumber business in the city of Cleveland, and desirous of placing the fire insurance upon their lumber yards, etc., with the said party of the second part: therefore the conditions and considerations under which the said insurance is to be placed with the party of the second part are as folows:

"First. That the insurance shall be placed with first class and reliable insurance companies.

"Second. That the rate of insurance shall not exceed the average rate paid by other lumber firms in the city of Cleveland for a like hazardous risk.

"Third. That the party of the first part agrees to place all of their insurance with the party of the second part until the terms of this contract are fulfilled; the party of the first part agrees to sell to the party of the second part a certain piece of land situated in Bay City Mich., at the corner of Fifth and Johnson streets the same having a frontage of about 133 feet on Fifth and a depth of about 100 feet on Johnson street the deed and abstract for this property showing the same to be free from all encumberance to be furnished at the time payment has been made as here specified. The party of the second part agrees to allow 25 per cent. on all premiums as they fall due to remain with the party of the first part as payment on the above described property. Also the party of the second part agrees to allow 20 per cent. on all premiums to remain with the party of the first part on all premiums due for insurance if placed for C. H. Prescott & Sons, Tawas City, Mich. It is also a part of this agreement that the party of the second part shall pay to the party of the first part interest at the rate of 6 per cent.

on all deferred payments, said interest commencing November 1st, '99. It is also understood that on and after November 1st, '99, the party of the second part shall collect all rents due on the above described property and shall pay the taxes as they mature, except the payment due in January, 1900, which shall be paid by the party of the first part. Also it is mutually understood that the party of the first part will accept payment for the property at any time the party of the second part may have an opportunity to dispose of same and the terms of this agreement will still continue until contract is fulfilled. The purchase price agreed upon for the above described property is $3,000 which shall be paid in the manner above described until $1,500 has been paid on the principal, leaving a balance of $1,500 still to be paid. After that time this contract shall be in force providing the said second party is able to place the insurance at equally as good rates for the party of the first part as other reliable agencies can place same, and in case second party is not willing so to do, the balance due on said property amounting to $1,500 shall be paid for in cash and this agreement shall be closed, although it is expected and desired that this arrangement may be so mutually satisfactory that the business relations may continue until full payment is made. It is also agreed that the party of the second part shall do his utmost to secure a blanket rate on all of the property at the separate yards of the Saginaw Bay Co., and shall also aim to secure the best rates possible at all times, and that there may be no misunderstanding in regard to the rates to be paid, it is expressly agreed by the party of the second part that at no time shall the party of the first part pay a higher average rate than is paid by other lumber firms in the city of Cleveland for a like hazardous risk.

(Seal.)    "Saginaw Bay Co.,
"Per C. H. Prescott, Jr.
(Seal.)    "Harry Koblitz.

"Witness:
"Katherine C. Keeley."

The petition avers that Koblitz has performed all the conditions of said contract on his part to be performed, and, as the policies of the defendants have from time to time expired, plaintiff has offered to place the insurance in accordance with the terms of said contract, but that defendants have refused and still refuse to place insurance with the plaintiff or place plaintiff in possession of the real estate aforesaid, and have wholly and utterly

failed to carry out said contract or any part thereof, whereby he has been damaged in the sum of $3,000, and he prays for judgment for said sum, with interest from the 19th day of September, 1899.

For answer to the petition the defendants admit that they are a partnership doing business under the name of the Saginaw Bay Company, and that they entered into the contract with said Koblitz hereinbefore set out, and they deny every other allegation in the petition.

A bill of exceptions is filed in this court setting out all the evidence introduced in the court below, together with the charge of the court as given to the jury.

From this it appears that no insurance under this contract was ever placed upon the property of the Saginaw Bay Company, nor was the real estate described in the contract ever conveyed, or the possession thereof delivered to the said Koblitz.

The claim on the part of the plaintiff below is that he was ready and able on his part to place such insurance, but that the defendant refused to accept it, whereas the claim on the part of the plaintiff in error is that Koblitz never offered to place any insurance for them at the rate named in the contract, and that the real reason why insurance from him was not accepted by them was that the rate charged by him was in excess of (to quote from the language of the contract) "the average rate paid by other lumber firms in the city of Cleveland for a like hazardous risk."

The evidence shows that the first insurance which was needed by the plaintiff in error after the date of said contract was on the 27th day of September, 1899, being eight days after the date of the contract. On this date insurance to the amount of $43,000 on the lumber-yards of the plaintiff in error was to expire, and they notified Koblitz of that fact. He, together with his partner, Mr. Thomas, made an examination of the property to be insured, and it is claimed on the part of the plaintiff in error that Koblitz then fixed a rate which he said was the lowest rate at which he could place the insurance, and that such rate was, on the most hazardous risk, $1.60 per hundred, and on the least hazardous, $1.50.

An important question in the case, therefore, it will be seen, was "the average rate paid by other lumber firms in the city of Cleveland for a like hazardous risk." As bearing upon this question, the plaintiff below placed upon the stand several witnesses to show what rate had been fixed upon such risks by an organization called "The Ohio Inspection Bureau." Among the witnesses placed upon the stand for this purpose was one Charles H. Patten, the superintendent of said "Ohio Inspection Bureau." This witness, in answer to the question, "What is the business of that company?" answered, "Well, it is an independent rating concern that operates similar to Dun's or Bradstreet's. We inspect all classes of insurable property in Cleveland and sell our rates to the agents." From this and other evidence it appears that this Ohio Inspection Bureau employed experts to examine property, with a view to fixing rates at what they think property should be insured, and for a compensation they furnish these rates to insurance agents in the city of Cleveland. The evidence shows that this organization furnished their estimate of rates to a large per cent.—indeed to nearly all of the insurance agents in the city of Cleveland. These rates so fixed by the inspection bureau were given out on cards furnished to the several agents, and the witness, Patten, speaking of the rates fixed by this bureau in force at the time of the execution of the contract between the parties to this action, was asked by counsel for the plaintiff below this question: "Now, on the stock of lumber, shingles, posts, timber, piling sticks and foundations for lumber piles, its own or held in trust or in commission or sold, but not delivered, all while contained in its yard and sheds, bounded by Stone's levee, Toronto, Ohio, and Chicago streets, Cleveland, Ohio. It is understood that this item covers like property while piled temporarily on said levee and streets. Other concurrent insurance permitted," being the third item in this plaintiff's Exhibit B, "what rate, if any, for the fall, particularly September, 1899, as fixed by you, was then in effect." This was objected to, overruled, and the proper exception taken. The answer was, "The rate was $1.60." Then, this question: "Now, on the other items of property owned by the Saginaw Bay Com-

pany in this city, what, if any, rate did you fix at that same time?'' and over the objection and exception of the defendant below, the witness answered, ''Well, there was a rate of $1.50 in effect prior to that.'' Then, the question: ''What was the rate in effect in September and October and November, 1899?'' and over the objection and exception of the defendant below the witness answered, ''$1.50.''

Other questions of similar import were put to these and to other witnesses, for the purpose of ascertaining what rate of insurance was placed by this inspection bureau upon the property of the Saginaw Bay Company and other similarly hazardous risks, which was in effect in the fall of 1899. The ruling of the court in admitting this class of testimony was erroneous, and the testimony was calculated to prejudice the rights of the plaintiff in error. The contract required that the defendant in error should furnish the insurance at a rate not exceeding the average rate paid by other lumber firms in the city of Cleveland for a like hazardous risk. Surely, this could not be determined by ascertaining what this bureau, or any expert acting for this bureau, should say would be a proper rate for such insurance.

It, of course, became necessary for the court to charge the jury as to what would be the measure of damages in the event that there should be a recovery for the plaintiff below, and on that subject the court said to the jury:

''The measure of damages, if you find for the plaintiff under the instructions of the court, is the value of the house and lot plus the rentals after the payment of taxes, after deducting from said rental that part of the purchase price which plaintiff's commission did not cover, and interest on the unpaid portion of the purchase price of the house and lot. The time for which such rental, taxes and interest should be taken into account is the period which the parties contemplated for the performance of the contract.''

It should be said, before discussing this proposition, that the evidence shows that the commissions which the plaintiff below would receive from the insurance companies upon the premiums paid for the insurance to be furnished, was 20 per cent., so that the amount which was to be kept out of the premium toward

payment upon the real estate named in the contract was in excess of the commissions which Koblitz would receive from the insurance companies for his services to the extent of 5 per cent. of such commissions. This would be true as to all insurance written upon property in the city of Cleveland, and the evidence showed nothing as to insurance at Tawas City, Michigan, the other place named in the contract. Attention is called to this because of the language of the charge quoted: ''deducting from said rental that part of the purchase price which plaintiff's commission did not cover.'' This charge as to the measure of damages was clearly erroneous and to the prejudice of the plaintiffs in error. If this rule were followed plaintiff would recover all that he could have recovered if everything to be done by him had been done and if the plaintiffs in error had neglected and refused to put him in possession of the real estate at the time specified in the contract and refused to convey it to him after it had been fully paid for. So that Koblitz would have received, without doing anything on his part except to tender, as he claims he did, on the 27th day of September, 1899, insurance to cover the $43,000 which was then about to expire; all that he would have received had he performed all the work which, under the terms of the contract, he was required to perform. It assumes that nothing remained for him to do; that he would not have been required to make any inspection of the risks from time to time as policies were to be issued; that he would not have been required to ascertain at what rate other like hazardous risks were being taken by other good companies; that he would not have been required to secure companies to take the risks from time to time as they should have been needed by the Saginaw Bay Company—all of which he certainly would have been required to do had the contract been carried out on the part of both. It further assumes that he would always have been prepared to furnish insurance such as his contract required, at the rates required by his contract; that the business of the company would have continued for so long a time as that his commissions would have amounted to $3,000.

The jury were not permitted to estimate what the probabilities were as to contingencies which might arise to prevent Koblitz

from performing his part, or to make it unnecessary for the Saginaw Bay Company to have insurance. Surely, all of these things would have a bearing upon the damages which were sought by Koblitz, if he sought any by reason of the failure of the plaintiffs in error to perform their part of the contract. If by default of the plaintiffs in error Koblitz was prevented from carrying out his contract and receiving the benefits of it, and if he was ready on his part to perform, then the damages which he should recover would be what that contract was worth to him. It may be somewhat difficult to fix upon a practicable rule to determine such damages, but it seems certain that the rule fixed by the court in its charge was not the true rule.

The case of *Rightmore* v. *Emil Hirner et al*, 188 Pa. St., 325, is, in many respects not unlike the case under consideration. Rightmore entered into a contract with Hirner and others to sell certain machines manufactured by Hirner and his associates at a given commission for a period of five years. At the end of the second year from the making of the contract Rightmore was dismissed from his employment and brought suit to recover damages for a breach of the contract. The trial court said to the jury upon the measure of damages:

"This contract had practically three years to run, and if they deprived him of that benefit they ought to pay what that contract was worth, and that is the profit which he would have gotten out of it."

This instruction was held to be erroneous, and the court say that what should have been given to the jury as the measure of damages, is:

"If the plaintiff is entitled to any damages for breach of contract, the measure of the damage is the value of the contract at the time of breach, and in considering the value the jury must bear in mind that the defendants were not obliged to furnish any specified number of machines, or even continue their manufacture; the plaintiff's right under his contract were subject to the contingencies of business, depression of trade, which might tend to reduce the sales, and in estimating the damages consequent upon the loss of the contract, the jury must take into consideration what the plaintiff probably could earn in some other

employment or occupation during the period during which the contract ran.''

Applying the principle announced in this case, which seems to be the true principle, the measure of damages to which Koblitz was entitled, if he was entitled to damages, was the value of the contract to him at the time of the breach, and, in considering the value, the jury should bear in mind that the defendants were not obliged to furnish an specified amount of insurance in any year, nor was it obliged to continue in business for any fixed length of time. The plaintiff's rights under his contract were subject to the contingencies of business, the probability of his being able to furnish the insurance for the whole length of time which it would take to pay for the real estate under the terms of the contract, and what would be the value of Koblitz's service and time in doing what he would have been required to do to carry out the contract for the whole time which it was to run.

To make out the case of the plaintiff below it was necessary for him to show that he was prepared to perform on his part and that the defendant below prevented such performance.

It is certain that after the 27th of September, 1899, neither party did anything toward the carrying out of the contract. Just prior to that time interviews were held between them, and a letter was written by Koblitz to the company and an answer to that letter written to Koblitz. The parties are not at one as to what transpired at the interviews. Koblitz says that he fixed no rates at which the insurance which was needed on the 27th of September would be furnished, though he says that it is true that his partner, in his presence, marked the rate of $1.60 opposite to one of the risks as it was written out on a slip of paper. The defendants below, C. H. Prescott, Jr., and G. A. Prescott, testify that both Mr. Koblitz and his partner, Mr. Thomas, stated that the best rates they could make for the insurance then wanted was $1.60 on one risk and $1.50 on the other. Mr. Koblitz in rebuttal denies this. Mr. Thomas was not called in rebuttal.

It is not denied but what both by letter and in the last interview between the parties to this suit, which took place in Sep-

tember, 1899, the plaintiffs in error declined to have anything further to do with Koblitz under the contract, and unless they were justified in so refusing they should respond to him in damages, but we think the evidence fails to show that he offered to furnish insurance at such rates as would not be above the average rates paid by other lumber dealers on like hazardous risks at the time. We find nothing to indicate that he ever suggested that for the time being he would furnish insurance at less than the rates fixed by this inspection bureau, and we think it clear that this was above the average rate paid on like risks which were considerably below the board rates, the only rates at which Koblitz seems to have offered to furnish any insurance.

Counsel for defendant in error urge, both in oral argument and in brief furnished, that the answers made by the jury to interrogatories propounded to them are such that if any error was committed by the court, either in the rulings upon evidence or the charge to the jury as to the measure of damages, such errors were in no wise prejudicial to the plaintiff in error. It is perhaps doubtful whether these interrogatories with their answers are properly before us. They do not appear in the transcript nor in the bill of exceptions, beyond the fact that the court said to the jury, at the close of the charge:

"The plaintiff has submitted certain interrogatories, which interrogatories you will answer as you find the facts to be from the evidence, and have each interrogatory signed by your foreman."

Then follows one interrogatory only. And the court said to the jury:

"You will answer these questions from the evidence, and your foreman will sign the answer after each one in the space for that purpose, and you will also answer the other questions submitted. They are numbered from 2 to 14. Number 1 is stricken out."

We find among the files a paper with the number and name of the case in typewriting upon the back of such paper, followed by the word "Interrogatories," and then written with a pen

are the words "Filed April 28, 1902." There is nothing other than these words to indicate by whom they were filed or where they were filed; but treating them as properly before us, they do not relieve the errors which we find were committed from prejudice to the plaintiff in error. The first question which appears to have been answered by the jury reads: "Were not other lumber firms in this city then paying on like hazardous risks the same rates as those offered by plaintiff to defendants?" This is answered, "Yes." The fact that some other lumber firms were paying on like hazardous risks the rates at which the plaintiff below offered to furnish insurance to the plaintiffs in error would not be sufficient to show that he was offering to furnish insurance at the rates provided in his contract. The next question which was answered, reads: "What other lumber firm or firms in this city besides the defendants paid a less rate of the premium for fire insurance in September, 1899, on a risk or risks of equal hazard with the defendants." The answer is "No, none." We think the evidence did not justify this answer. The next three questions are based upon the one just quoted. The next: "What was the value of the house and lot which defendants contracted to sell to plaintiff?" The answer is: "$3,000." The fact that this answer was justified by the evidence does not relieve the charge as to the measure of damages from prejudice to the plaintiffs in error, if the views expressed in this opinion as to the true measure of damages are correct. The next three are answered in accordance with the views of this court as to the evidence, but do not affect what has already been said as to the introduction of evidence on the measure of damages. The answers to the next three are not inconsistent with the position taken here by the plaintiffs in error.

The last question reads: "Did defendants' failure to furnish plaintiff with the information mentioned in question No. 11 prevent plaintiff from tendering policies of insurance as required by his contract?" The answer is, "Yes." If it is meant by this to say that this was the only thing which prevented the defendant in error from tendering the policies, it is not justified, we think, by the evidence.

For error upon the admission of evidence and in the charge of the court, and for the reason that the verdict is not sustained by the evidence, the judgment of the court of common pleas is reversed.