Argued December 13, 1911, decided January 2, 1912.

## HAGESTROM v. SWEENEY.

[119 Pac. 725.]

Evidence—Admissions—Construction—Building Contracts—
Breach—Special Damages.

1. The testimony of a building contractor suing for his wrongful discharge from the job, and alleging that he was deprived of present and future work to his damage in a specified sum, that he has been at work during most of the time since the discharge, is an admission that no damages as alleged resulted.

Evidence—Opinion—Damages—Breach of Contract—Loss of
Profits.

2. A party to a contract, who seeks to recover loss of profits by breach of the contract, must establish the loss by proof of data from which the extent of the profits may be computed, and the opinion of witnesses as to what profits a contractor would have made if permitted to complete the work, is inadmissible to establish such loss.

Appeal and Error—Disposition of Case on Appeal—Conditional
Affirmance.

3. Where the amount erroneously allowed as damages in an action for breach of contract is certain, the Supreme Court may affirm the judgment on condition that plaintiff will remit such amount.

From Multnomah: Calvin U. Gantenbein, Judge.

Statement by Mr. Chief Justice Eakin.

This is an action by Pete Hagestrom, Martin Swanson, Ole Johnson, Oscar Midbo, Rasmus Midbo, Isaac Midbo, Pete Christiansen and Robert Thompson, partners, doing business under the firm name and style of Pete Hagestrom & Company, against J. W. Sweeney, S. M. Blumauer and Isaac Blumauer, partners, doing business as railroad builders and contractors, under the firm name and style of the J. W. Sweeney Construction Company, to recover compensation for work done upon a contract and damages suffered by a breach of the contract. Plaintiffs, on July 28, 1909, contracted with defendants to build a railroad grade between certain stations in Washington County, Oregon, and to complete the work by June 1, 1910, for which defendants agreed to pay plaintiffs at certain rates, according to the estimates of the engineer, for removing

rock and earth and for doing other work. According to the estimates furnished by the engineer in charge, the work done, as alleged by plaintiffs, amounted to $6,173.40, against which they admit that defendants are entitled to credit for board, $1,154.50; hospital fees, $50; supplies, $389.05; cash upon the contract, $1,736.45; tools, etc., $1,531.64, less a credit of $34.45. The total, as stated, is $4,661.46, leaving a balance due of $1,511.94, no part of which has been paid, although demanded. For further cause of action, plaintiffs allege: That it is provided in the contract that "the order to stop and abandon said work shall be made in writing, signed by the contractor and shall be delivered to the stationmen * * thirty days prior to the date when such order shall take effect. * * When the work shall cease at the expiration of said period of thirty days from the giving of such notice, the work shall be deemed to have been finally completed, and payment shall be made therefor in the manner hereinbefore provided in paragraph 7, and this contract shall be regarded as terminated and at an end." That on the 28th day of February, defendants orally notified plaintiffs to cease work, took possession of plaintiffs' tools and implements, and closed the boarding house, so that plaintiffs were compelled to, and did, cease work, and left the camp. That, if they had been permitted to proceed with the work until June 1st, they could have accomplished much work. That by virtue of the cancellation of the contract plaintiffs were deprived of present and future work, to their great damage in the sum of $2,000. The answer denies every allegation of the complaint and affirmatively alleges the contract briefly as set out in the complaint; that plaintiffs performed work thereunder; but that on February 28, 1910, without cause, they abandoned the work; and that defendants have paid and advanced to plaintiffs on the contract the sum of

$5,161.18. They also set up a counterclaim for damages. The reply denies the new matter of the answer, except in certain particulars. Upon the trial before a jury a verdict was rendered for plaintiffs in the sum of $1,184.05, and the sum of $1,000 damages. Upon a motion for a new trial, and as a condition of its denial, $500 of the damages included in the verdict was, by plaintiffs, remitted, and judgment was rendered accordingly. Both parties appeal.  CONDITIONALLY AFFIRMED.

For plaintiffs there was a brief over the names of *Messrs. Bernstein & Cohen* with an oral argument by *Mr. Alexander Bernstein.*

For defendants there was a brief with an oral argument by *Mr. M. J. MacMahon.*

Opinion by MR. CHIEF JUSTICE EAKIN.

Defendants assign as error certain rulings of the court in the admission of evidence, which rulings we deem were not prejudicial, and they need not be further considered. They also assign as error the instruction given by the court to the jury as follows: "If you find that the plaintiffs were improperly discharged and not permitted to continue the work under the terms of the contract, then you may assess such damages, as would reasonably compensate them for the breach not to exceed $2,000"— which was duly excepted to, upon the ground that there was not any evidence before the jury upon which to predicate a verdict for damages.

1. There was no proof of specific damages arising out of the breach; the allegation of damages being that they were deprived of present and future work to their great damages in the sum of $2,000. Plaintiffs testified that they have been at work during the most of the time since being discharged from the job; that they have been continuously at work, which is an admission that no such damages resulted.

2. Plaintiffs attempt to prove profits that would have resulted to them if allowed to complete the contract, but no proof was offered of facts from which profits could be estimated, such as the amount of rock or earth yet to be removed, or the probable expense of its removal. On the contrary, opinion evidence was offered without proof of any data upon which to base it, and therefore was not competent evidence of any damage. Upon breach of a contract, where loss of profit is the measure of damages relied upon, such probable profits must be established by proof of data from which the extent of the profit, if any, may be computed. 4 Ency. Ev. 5, 14, 21; 8 Am. & Eng. Ency. Law (2 ed.) 621, 622, and note; *Douglas* v. *Railroad Company,* 51 W. Va. 523 (41 S. E. 911) ; *Ramsey* v. *Holmes Elec. Prot. Co.,* 85 Wis. 174 (55 N. W. 391) ; *Lentz* v. *Choteau,* 42 Pa. 435; *Durkee* v. *Mott,* 8 Barb. (N. Y.) 423. The only evidence offered to prove loss of profits is disclosed by the questions to witnesses as to their opinion as to what the profits would have been, and the offer was properly denied. This conclusion renders it unnecessary to consider further plaintiffs' appeal, which related only to the damages remitted. The verdict was in favor of plaintiffs in the sum of $1,184.05 and the further sum of $1,000 damages, which, as stated, were reduced to $500.

3. As the damages are found in a separate item of the verdict, the amount erroneously found is fixed, and we may affirm the judgment on condition that plaintiffs remit from the judgment the amount of damages, namely, $500, following *Gardner* v. *Kinney,* 60 Or. 292 (117 Pac. 971).

Therefore it is ordered that if the plaintiffs shall, within thirty days, remit the sum of $500 from the judgment of the lower court, the remainder of the judgment will be affirmed; otherwise, it will be reversed and remanded for a new trial. Defendants to recover costs in this court.          CONDITIONALLY AFFIRMED.