Argued at Pendleton October 27, affirmed December 21, 1920.

# JOHNSON *v*. HOMESTEAD–IRON DYKE MINES CO.

### (193 Pac. 1036.)

**Pleading—Facts Stated in Complaint Assumed True on Motion to Elect.**

1. For the purpose of considering defendant's motion to compel plaintiff to elect upon which of his alleged causes of action he will rely, the facts stated in the complaint are assumed to be true.

**Pleading—Election not Compellable Unless Duplicate Recovery Possible.**

2. Plaintiff will not be required to elect upon which of his alleged causes of action he will rely where, under the complaint, there cannot be duplicate recovery for the same cause of action.

**Appeal and Error—Denial of Motion to Elect Held not Reversible Error Under Statute.**

3. Even if plaintiff, under Section 67, Or. L., should have stated two alleged causes of action in one count, his failure to do so *held* not ground for reversal, under Sections 85 and 107, because of denial of defendant's motion to compel election; defendant having suffered no prejudice by the ruling.

**Contracts—Complaint for Breach of Hauling Contract Held not Demurrable.**

4. In action for breach of hauling contract, complaint *held* not demurrable.

**Contracts—Mutuality Required.**

5. A promise made by one party without a corresponding consideration, obligation or promise made by the other is void.

**Contracts—To be Construed as a Whole.**

6. A contract must be construed as a whole; every paragraph, every sentence, clause, phrase and word must be considered in interpreting its meaning.

**Contracts—Option to Continue Hauling Contract not Void for Want of Mutuality.**

7. Provision in concentrates hauling contract that, after 1,600 tons of concentrates had been hauled, the contractor should have the preference right to continue hauling so long as the other party had any hauling to be done, was not void for lack of mutuality where the contractor purchased a motor truck, hauled 1,600 tons, exercised his preference right, and continued to haul until he had transported 4,300 tons, when the other party attempted to rescind.

**Contracts—Unilateral Contract may be Made Mutual by Performance.**

8. Where the promise consists of the doing of an act by another, and the latter does the act, the contract is not void for want of mutuality.

#### Contracts—Adequacy of Consideration not Inquired into.

9. The law will not inquire as to the adequacy of a consideration, but anything which fulfills the requirements of consideration will support a promise, whatever may be the comparative value of the consideration and of the thing promised.

#### Damages—Lost Profits must be Proved by Definite Data.

10. Where loss of profits from breach of contract is sought to be recovered, such probable profits must be established by proof of data from which the extent of the profit, if any, may be ascertained.

#### Contracts—"Unavoidable Serious Accident" Defined.

11. In a contract barring liability for delays caused by "unavoidable serious accidents," such an accident means unusual, unexpected and unintended occurrence, not brought on by failure to exercise ordinary care and prudence, and of such character that the parties could not reasonably have contemplated the same at the time of the contract to take adequate precautions to prevent it by the exercise of ordinary diligence, prudence and foresight, and which causes such interference and resulting delay as could not by such diligence, prudence and foresight have been avoided.

#### Contracts—Whether Delay Excusable as Caused by Unavoidable Serious Accident Held for Jury.

12. Under a concentrates hauling contract, barring delays caused by unavoidable serious accidents, where the contractor's truck, while hauling a load of concentrates, for some unexplained reason, and without negligence of the contractor or his agents, left the road and rolled down a steep embankment, injuring the driver and damaging the truck, and the accident, according to the evidence, resulted in some delay, whether such delay was excusable as caused by an unavoidable serious accident was for the jury.

#### Appeal and Error—Under the Constitution, Verdict Supported by Some Evidence not Reviewable.

13. Under Article VII, Section 3, of the Constitution, the Supreme Court will not re-examine a cause or fact tried by a jury, unless the court can affirmatively say there is no evidence to support the verdict.

## From Baker: GUSTAV ANDERSON, Judge.

When loss of profits an element of damages, see note in 60 Am. Rep. 488.

Right to recover profits as damages for breach of contract where profits are very object of contract, see note in Ann. Cas. 1914D, 36.

10. On loss of profits as element of damages for breach of contract, general rules applicable to all kinds of contracts, see note in 53 L. R. A. 34.

In Banc.

This is an action prosecuted by Percy M. Johnson against Homestead-Iron Dyke Mines Company, a corporation, operating a mine at Homestead, Baker County, Oregon, for breaching a contract to haul concentrates.

The town of Homestead is the terminus of what is known as the Homestead Branch of the Oregon Short Line Railroad Company, which connects Homestead with Huntington. Between the stations of Homestead and Oxbow the railroad passes through a tunnel 2,300 feet in length. Near the north end of the tunnel is situated the town of Copperfield; at the south end thereof, the town of Oxbow. There is a private wagon road connecting Huntington, Copperfield, and Oxbow, that passes through a small tunnel about 75 feet in length which caved in during the time plaintiff was attempting to fulfill the terms of his contract. Prior to February 11, 1919, the timber in the large tunnel was destroyed by fire. By reason thereof the defendant company was prevented from shipping its products by rail from Homestead to Huntington and thence to Utah, as was its practice. On February 11, 1919, Percy M. Johnson, plaintiff and respondent herein, made and entered into a contract with the defendant and appellant, the Homestead-Iron Dyke Mines Company, a corporation, to transport the concentrates produced by the defendant company at its mine at Homestead to the town of Oxbow. Among the provisions of the contract executed between the parties we set out the following:

"(3). The Company agrees to pay the Contractor the sum of four Dollars ($4.00) per short ton for each and every ton of said concentrates or other

materials hauled from Homestead to Oxbow; said payment to be made in the following manner, to wit:

"Eighty per cent (80%) of said price per ton shall be paid weekly upon receipt of the car-load weights as determined by the Railroad Company at Huntington, Oregon. The balance due shall be paid weekly upon receipt of the car-load weights as determined by the International Smelting Company of International, Utah, which weight is mutually recognized as the most accurate. The weights referred to herein are meant the net weights of the concentrates. All other materials to be paid for weekly at the above rate upon delivery at Oxbow. * *

"(9). This is mutually understood and agreed to be an exclusive contract from the Company to the Contractor for the hauling of said concentrates and return freight, subject to the performance of the agreement and covenants herein expressed.

"(10). The Contractor agrees to transport an average of fifty tons of concentrates per day, counting 26 working days to the month of thirty days, until the concentrates on hand at this date, estimated at 1200 tons, plus the concentrates which will be accumulating during this period, have been delivered f. o. b. cars at Oxbow; and, in event of the failure of the Contractor to maintain the said daily average of 50 tons, he shall pay the Company a forfeit of Fifty Cents (50c) per ton for each and every ton less than Thirteen Hundred (1300) tons delivered at Oxbow in said month of 30 days, barring delays caused by 'Acts of God' or unavoidable serious accidents.

"(11). After the aforesaid 1200 tons of concentrates on hand, plus the concentrates which will be accumulating, has been hauled at the said average of fifty tons per day, the Company agrees to furnish the Contractor a daily minimum average of not less than ten tons per day counting 26 working days to the month of 30 days, providing that the Company's Mill continues in operation and barring delays caused by 'Acts of God' or serious accidents, and further the Company agrees to furnish the Contractor a total of

not less than 1600 tons of concentrates to haul according to the terms herein specified including the aforesaid 1200 tons, and, failing to do so, the Company will pay the Contractor the sum of $500.00 as reasonable reimbursements of his initial outlay and expense incurred in bringing in his equipment, etc. * *

"(13). It is further understood and agreed that, after the aforesaid 1600 tons of concentrates have been hauled from Homestead to Oxbow, the Contractor shall have the preference right to continue hauling said concentrates and return freight at the same rates per ton as specified in paragraphs No. 4 and No. 3 hereof as long as the Company shall have any hauling to be done.

"(14). The Contractor agrees to commence active preparations to carry out the terms of this contract immediately, and will either ship or drive his truck to Oxbow as quickly as suitable arrangements can be made, and he further agrees to commence hauling the concentrates at the said average of 50 tons per day within ten days from the date his equipment arrives.

"(15). Time and performance are the essence of this contract."

The plaintiff, Johnson, entered into the performance of his contract and hauled about 4,300 tons of concentrates; but the company, becoming dissatisfied, rescinded the contract and refused to permit him to haul further. Thereafter Johnson brought action against the company. His complaint alleges four separate rights of action, each based upon an alleged breach of the contract. The first right of action undertakes to recover $576.78, alleged to have been wrongfully withheld by the defendant as a forfeiture or liquidated damages. The second alleges a breach of the contract by the defendant in refusing to permit plaintiff to haul 400 tons of concentrates, asserted to have accumulated and to be on hand August 15, 1919,

the date plaintiff ceased to transport the company's concentrates, resulting in a loss to plaintiff of $800. The jury found against the plaintiff on this asserted claim. The third alleges a violation of the contract by defendant's failing to produce, following June 9, 1919, a minimum production of ten tons of concentrates per day, causing plaintiff a loss of profit of $2 per ton on 220 tons. This claim for damages was withdrawn by the plaintiff during the trial. The fourth alleges a breach of the contract by the defendant in refusing to permit the plaintiff to haul 4,225 tons of concentrates between August 15, 1919, and February 1, 1920, which resulted in an alleged loss of profit to plaintiff of $2 per ton.

Pending the trial the complaint was amended and the tonnage in the last-mentioned claim for damages reduced to 3,865.69 tons. To this complaint the defendant filed a motion "to compel the plaintiff to elect upon which ground or cause he will proceed to trial, or, failing that relief, the defendant moved to strike the amended complaint from the files, upon the ground that the relief prayed for in the various causes of action was included in other causes of action set forth in the amended complaint, and that without such election duplicate recovery for the same cause of action could be recovered." A demurrer was also filed, alleging that the complaint failed to state facts sufficient to constitute a cause of action. Both were overruled. Thereupon the defendant answered, a trial of the issues was had, and a verdict was rendered by the jury, finding for the plaintiff on his "first cause of action in the sum of $536," and on his "third, further, and separate cause of action in the sum of $3,865.69." Judgment was thereafter entered in favor of plaintiff and against defendant for

$4,401.69, with costs and disbursements taxed at $134.40. From the judgment entered the defendant appeals to this court.                                AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. John L. Rand.*

For respondent there was a brief with oral arguments by *Messrs. Nichols & Hallock.*

BROWN, J.—In defendant's abstract of record appear fifty-five assignments of error. In its brief it rests its cause upon seven propositions, which it vigorously maintains. The plaintiff alleged damage by reason of four asserted breaches by defendant of the contract between the parties, and stated his rights of action growing out of said breaches as separate causes in one complaint. The court having overruled the defendant's motion requiring the plaintiff to elect upon which of his alleged causes of action he would rely, it assigns the court's action as error.

1, 2. We are not convinced that the court committed error in denying defendant's motion. For the purpose of considering the motion, we assume the facts stated in the complaint to be true, and, after having carefully read that document, we are satisfied that there could not have been duplicate recovery for the same cause of action. Hence no grounds existed requiring an election, nor was there a valid reason for dismissing the complaint. It was said by Justice WOLVERTON, speaking for this court, that:

"The practice, however, of allowing or disallowing a motion of the kind is a matter largely within the sound discretion of the trial court: *Manders* v. *Craft*, 3 Colo. App. 236 (32 Pac. 836); *Carlton* v. *Pierce*, 1 Allen (Mass.), 26; *Hawley* v. *Wilkinson*, 18 Minn. 525 (Gil. 468); *Plummer* v. *Mold*, 22 Minn. 15; *Wagner* v.

*Nagel,* 33 Minn. 348 (23 N. W. 308); *Kerr* v. *Hays,* 35 N. Y. 331.  *Harvey* v. *Southern Pac. Co.,* 46 Or. 505 (80 Pac. 1061)."

In a recent case discussing the law relating to the right of the defendant to compel the plaintiff to elect between two causes of action stated in the complaint, Justice BURNETT said:

"The canon laid down by the case last cited is in substance that to require an election it must be impossible for both causes of action simultaneously to be true": *Askay* v. *Maloney,* 92 Or. 566, 573 (179 Pac. 899, 902), citing *Hayden* v. *Pearce,* 33 Or. 91 (52 Pac. 1049); *High* v. *Southern Pac. Co.,* 49 Or. 98 (88 Pac. 961); *Harvey* v. *Southern Pac. Co.,* 46 Or. 505 (80 Pac. 1061); *Swank* v. *Moisan,* 85 Or. 662 (166 Pac. 962).

A general rule of pleading for the recovery of damages on account of breaching a contract is thus stated in 4 Enc. of Plead. & Prac. 941:

"Where it is sought to recover for several breaches of one entire contract, it may be stated, as a general rule, that all the breaches may be set out in one count or paragraph of the declaration or complaint: *Wilcox* v. *Cohn,* 5 Blatchf. (U. S.) 346 (Fed. Cas. No. 17,640); *Sheetz* v. *Longlois,* 69 Ind. 491; *Smiley* v. *Deweese,* 1 Ind. App. 211 (27 N. E. 505); *Richardson* v. *State,* 55 Ind. 381; *Fisk* v. *Tank,* 12 Wis. 276; *Chambers* v. *Robbins,* 28 Conn. 544; *Smith* v. *Boston etc. R. Co.,* 36 N. H. 459; *Legh* v. *Hewitt,* 4 East, 154; *Brown* v. *Stebbins,* 4 Hill (N. Y.), 154."

The rule under the Oregon Code, as announced by Justice DEADY, in the case of *Oh Chow* v. *Hallett,* 2 Sawy. 260 (Fed. Cas. No. 10,469), is as follows:

"The practice of assigning more than one breach in the same count or statement of a cause of action, prior to the Code, was permitted only in covenant upon a deed and by statute in debt upon bond with a condition, or to secure covenants.  When an ordinary

contract contains various substantive and independent provisions—as in this case, to pay for labor furnished, and to furnish transportation to laborers—if there is a breach or failure to perform more than one of the stipulations, there are distinct causes of action, requiring different proofs, and which may admit of different defenses, and therefore should be stated separately. This cause of action, not being pleaded separately, is liable to be stricken out on motion: Or. L. 261.''

In *Toy William* v. *Hallett,* 2 Sawy. 261 (Fed. Cas. No. 14,123), Justice Deady stated that different breaches of the same contract give rise to distinct causes of action. Justice Bean, in speaking for this court in *Bade* v. *Hibberd,* 50 Or. 504 (93 Pac. 365), said:

''The causes of action mentioned in the complaint both arise out of contracts, and can be properly united in the same complaint. * * The objection that they are not separately stated should have been taken by motion at the proper time.''

Section 67, Or. L., provides that the complaint shall contain a plain and concise statement of the facts constituting the cause of action, without unnecessary repetition. Section 85, Or. L., states that in the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view of substantial justice between the parties.

3. The language of the law is clear, concise, and manifest. While the writer believes that it would have been better pleading for the plaintiff to have stated his first further and separate cause with his third alleged cause in one count, his failure to do so is not a ground for reversing this case because of the denial of defendant's motion. The defendant suffered no prejudice by reason of the court's ruling.

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party": Section 107, Or. L.

4. The court committed no error in overruling defendant's demurrer. The plaintiff's rights grew out of the alleged breaching of the contract by defendant. The plaintiff pleads the making of the contract, its terms, the consideration, performance by plaintiff, breach by defendant, and damages: *American Audit Co.* v. *Indus. Fed. of Am.*, 80 App. Div. 544 (80 N. Y. Supp. 788); *Wuchter* v. *Fitzgerald,* 83 Or. 673 (163 Pac. 819); *Easton* v. *Quackenbush,* 86 Or. 374, 377 (168 Pac. 631); *Burggraf* v. *Brocha,* 74 Or. 381 (145 Pac. 639); *Pac. Bridge Co.* v. *Oregon Hassam Co.,* 67 Or. 576 (134 Pac. 1184).

The proper construction of Section 11 of the contract is involved in this controversy. Under a certain condition therein specified, the company agrees to pay the contractor $500. Now, what is that condition? Said section provides that "the company will pay the contractor the sum of $500, as reasonable reimbursements of his initial outlay and expense incurred in bringing in his equipment," provided that it "fails to furnish the contractor less than 1,600 tons of concentrates to haul." This condition and provision of the contract is clear. It means just what it says and nothing more. The contractor never was entitled to claim that $500, or any part thereof.

It is asserted by appellant that the court erroneously construed Section 13 of the contract, providing that—

"After the aforesaid 1,600 tons of concentrates have been hauled, * * the contractor shall have the preference right to continue hauling the said concentrates

* * so long as the company shall have any hauling to be done."

The testimony shows that plaintiff was afforded the right to elect, and did elect to haul after he had transported 1,600 tons, and continued to haul until he had delivered at Oxbow 4,300 tons of concentrates.

As the case is presented by the record, the court properly rejected instruction 19 requested by defendant, and rightly gave instructions 17 and 23, the latter reading:

"In his fourth cause of action, designated in the complaint as the third, further, and separate cause, plaintiff refers further to that provision of the contract which gave him a preference right or option to continue hauling after the 1600 tons had been hauled, on the same terms as provided in the contract, so long as defendant should have any hauling to be done; and he alleges that he exercised that option and elected to so continue. In this connection he further alleges that on August 15th, 1919, defendant wrongfully rescinded the contract, and thereafter prevented plaintiff from hauling, and that since that time defendant has produced not less than 4225 tons of concentrates, and he alleges that, had he not been so deprived and prevented from hauling, he would have hauled the same according to the terms of the contract, and that his costs and expenses of such hauling would not have exceeded $2 per ton, and that by reason of being so prevented he therefore suffered damages in the sum of $8,450.

"These allegations are denied by defendant, and the burden of proof is therefore upon plaintiff to establish by a preponderance of the evidence that he was willing, ready, and able to perform according to the terms of the contract, that defendant wrongfully prevented it, and that he was damaged by not being permitted to haul those concentrates at $4 per ton in conformity with the contract."

5. The defendant forcefully argues the proposition that the contract is only a *nudum pactum*. It is true that a promise made by one party without a corresponding consideration, obligation or promise made by the other is void. In the case of *Corbitt* v. *Salem Gas Co.*, 6 Or. 405, 407 (25 Am. Rep. 541), Mr. Justice Prim, speaking for this court, said:

"A promise made by one party is a good consideration for a promise made by the other party, but the promises must be concurrent and obligatory on both parties at the same time. A promise made by one party, as in this case, without a corresponding obligation or promise by the other, is void."

This case was cited with approval in *Lemler* v. *Bord,* 80 Or. 224, 227 (156 Pac. 427, 1034), and in *The Oregon Home Builders* v. *Crowley,* 87 Or. 517, 539 (170 Pac. 718, 171 Pac. 214). In *Livesley* v. *Johnston,* 45 Or. 30, 41 (76 Pac. 946, 948, 106 Am. St. Rep. 647, 65 L. R. A. 783), this court, speaking by Justice Wolverton, said:

"Where the agreement is wholly executory, it is essential that the obligations be mutual, else there is no consideration for its support, and it is but a mere *nudum pactum.*"

To the same effect are the cases of *Rose* v. *Oliver,* 32 Or. 447 (52 Pac. 176); *Richardson* v. *Orth,* 40 Or. 252, 262 (66 Pac. 925, 69 Pac. 455), and *Webb* v. *Isensee,* 79 Or. 114, 120 (152 Pac. 800).

6, 7. The contract under consideration must be construed as a whole; every paragraph, every sentence, clause, phrase, and word must be considered in interpreting its meaning. The paragraph containing the option, therefore, is not to be construed as if it stood alone. There was some consideration for the option. Plaintiff purchased a motor truck, quit his employment, went to Homestead, and in storms and over bad

roads undertook to fulfill his contract by hauling the produce of defendant's mine from Homestead to Oxbow. He was induced to undergo the hardships of hauling the concentrates on hand at the beginning by the defendant's promise to give him the right to do all its hauling so long as it had hauling to do. That was the incentive that moved the contractor to enter into the contract. He not only hauled the 1,600 tons, and exercised his preference right, but continued to haul until he had transported 4,300 tons, when the defendant rescinded the contract.

8, 9. Where the promise consists of the doing of an act by another, and the latter does the act, the contract is not void for want of mutuality: *The Oregon Home Builders* v. *Crowley*, 87 Or. 517 (170 Pac. 718, 171 Pac. 214); 6 R. C. L. 687, § 94. There was a consideration from plaintiff to defendant for the option. It is an elementary principle that the law will not enter into an inquiry as to the adequacy of a consideration. This rule is almost as old as the law of consideration itself. Therefore anything which fulfills the requirements of consideration will support a promise, whatever may be the comparative value of the consideration and of the thing promised: 1 Williston on Contracts, § 115.

10. Upon a breach of a contract, where loss of profit is the measure of damages relied upon, such probable profits must be established by proof of data from which the extent of the profit, if any, may be ascertained: *Hagestrom* v. *Sweeney*, 60 Or. 433, 436 (119 Pac. 725, citing 4 Ency. Ev. 5, 14, 21); 8 Am. & Eng. Ency. of Law (2 ed.), 621, 622, and note; *Douglas* v. *Ohio River R. R. Co.*, 51 W. Va. 523 (41 S. E. 911); *Ramsey* v. *Holmes Elec. Prot. Co.*, 85 Wis. 174

(55 N. W. 391); *Lentz* v. *Choteau,* 42 Pa. 435; *Durkee* v. *Mott,* 8 Barb. (N. Y.) 423.

We have read all the testimony in this case, and are satisfied that the record discloses an abundance of data from which the alleged profit could have been estimated.

11, 12. The defendant requested the court to instruct the jury to find for the defendant on the first cause of action alleged in the complaint, and because of the refusal of the court to give such instruction counsel alleges error. He also excepted to the instruction of the court defining the phrase "act of God," given to the jury, and likewise excepted to the instruction of the court advising the jury that—

"An unavoidable, serious accident means, in such a contract, any unusual, unexpected, and unintended occurrence, and not brought on by failure to exercise ordinary care and prudence, and of such character that the parties could not reasonably have contemplated the same at the time of the contract to take adequate precautions to prevent it by the exercise of ordinary diligence, prudence, and foresight, and which causes such interference and resulting delay as could not by such diligence, prudence, and foresight have been avoided."

The court approves that definition. The phrase "act of God," as explained to the jury by the court, was so favorable to the defendant that he is not in a position to complain. Under the court's instruction and the evidence, the jury could not have excused the plaintiff from nonperformance by reason of an act of God. However, there was some testimony tending to prove an unavoidable serious accident. The plaintiff's truck, while hauling a load of concentrates, for some unexplained reason, and without negligence upon the part of plaintiff or his agents, left the narrow grade of the roadbed and rolled hundreds of

feet down a steep embankment. The driver was very seriously injured and the truck damaged. That accident, according to the evidence, delayed the contractor in some measure at least, and was therefore a proper matter to be submitted to the jury as a question of fact. The jury found for the plaintiff, and that finding must stand.

13. Under the provisions of Article VII, Section 3, of the Constitution, this court has no right to re-examine a cause or fact tried by a jury, unless the court can affirmatively say there is no evidence to support the verdict: *Martini* v. *Oregon-Wash. R. & N. Co.*, 73 Or. 283 (144 Pac. 104); *Sullivan* v. *Wakefield*, 65 Or. 528 (133 Pac. 641); *Woods* v. *Wikstrom*, 65 Or. 581, 587 (135 Pac. 192); *Taggart* v. *Hunter*, 78 Or. 139 (150 Pac. 738, 152 Pac. 871, Ann. Cas. 1918A, 128).

The record disclosing no substantial error whereby defendant might have been prejudiced, this case is affirmed.                                         AFFIRMED.

---

Argued at Pendleton October 26, affirmed December 21, 1920.