Argued May 18, affirmed as modified June 8, 1960

BARRY ET UX *v.* SETO ET UX

352 P. 2d 733

*Harry G. Hoy,* Oceanlake, argued the cause and filed a brief for appellants.

*W. T. Hollen* argued the cause for respondents. On the brief were Adams & Hollen, Newport.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Holman, Justices.

HOLMAN, J. (Pro Tempore)

The plaintiffs Berry, in July of 1955, sold a business building composed of four rentals and an adjacent residence in Depoe Bay to defendants Seto. Using approximate figures, the price was $22,000, on which $14,000 was paid down, leaving a balance of $8,000. This balance was due in a series of $500 semiannual installments. Nothing further was paid, and plaintiffs brought this suit in February of 1957 for strict foreclosure of the contract. Defendants filed a cross-complaint for approximately $8,000 damages for fraud for claimed misrepresentations by plaintiffs concerning the condition of the business building at the time of sale. Defendants contended the building was represented to them as being in good condition and without a water problem. The case was tried by the court and resulted in a decree of foreclosure and a denial of the claims made in defendants' cross-complaint, from which decree defendants appeal.

There is no doubt the contract was in default, and the case was tried on the merits of defendants' cross-complaint.

■ The evidence shows that Mr. Berry was an experienced real estate man. The business and age of the defendant, Mr. Seto, are not clear from the record. He apparently had owned in the past some other rental property. There was a decided conflict in the testimony as to the condition of the business building, the representations that were made concerning it, and the extent of the inspection of the building by defendants. There can be no doubt that the building was subject to water coming in from the ceiling, walls and floor. The seriousness of the problem was vigorously disputed by plaintiffs.

Mr. Seto made two trips to see the property prior to purchasing it. On the second of these trips he was accompanied by his wife and mother-in-law. On the first trip he says he did not look at the building at all, as when he glanced at the outside, he was not interested. On the second trip he says he did not go inside and inspect the interior except that he waited for Mr. Berry in the front part of one of the rentals, which was occupied by an agate shop. The front portion was but a few feet deep and was separated from the rear by a partition. Mr. Berry says they inspected the roof together on the first trip and on the second went inside and inspected all the premises except one rental, to which they could not obtain access. He denied making any representations that the premises were not troubled with water. The testimony indicates that water damage was apparent upon any kind of casual inspection.

Immediately after completion of the deal in July of 1955, defendants moved into the residence and took possession of the business building. Their possession was continuous up to the time of trial. No claim for damages because of water was made until after the suit for foreclosure was filed in February of 1957.

In August of 1956, after one full winter in the building, Seto attempted to make a payment to Berry of $500 by a check given to Seto by a third party, which turned out to be of no value because of insufficient funds. At that time, after an Oregon Coast winter, he must have had full knowledge of any difficulty with water. This court must necessarily look with caution at any claim for damages which is advanced for the first time at such a late date.

The trial judge could not visualize persons so inexperienced they would buy a building without having

made any inspection and, therefore, chose to disbelieve the testimony of the Setos. We cannot quarrel with his conclusion.

There are no disputes relative to the law as we view this case, only as to questions of fact. We agree with the propositions of law advanced by defendants. The trial judge chose to believe one set of witnesses and disbelieve another. He was in a much better position to evaluate their testimony than are we who are looking at a cold record. There is evidence in the record to sustain his decree, and we will not disturb his evaluation of the facts.

It does seem harsh that defendants should lose such a large investment in the property. Defendants have now had several years in which to sell the building and attempt to salvage something from what would appear to be a somewhat disastrous adventure for them. This court will allow defendants 60 days from the date of the mandate of this court in which to comply with the decree of the lower court or suffer foreclosure.

■ Defendants assign as error the failure of the trial court to reopen the case for the taking of additional testimony. This was a discretionary matter, and the motion's denial was not error.

The decree of the trial court will be affirmed as modified.