Argued June 7, affirmed November 8, petition for rehearing
denied December 19, 1967

KULM, *Appellant, v.* COAST-TO-COAST
STORES CENTRAL ORGANIZA-
TION, INC., ET AL, *Respondents.*
432 P. 2d 1006

*Arden E. Shenker,* Portland, argued the cause for appellant. With him on the briefs were Tooze, Powers, Kerr, Tooze & Peterson, Portland.

*Paul W. Jones,* Portland, argued the cause for respondents. With him on the brief were Morrison & Bailey and Jack H. Dunn, Portland.

Before PERRY, Chief Justice, and MCALLISTER, O'CONNELL, GOODWIN and DENECKE, Justices.

O'CONNELL, J.

This is an action brought by lessor for the breach of an alleged agreement by defendants to renew a lease. Plaintiff appeals from a judgment for defendants.

Defendants Richard and John Kirby operated a Coast-to-Coast Store under a franchise from defendant Coast-to-Coast Central Organization, Inc. The Central Organization entered into negotiations with plain-

tiff Levine for the renewal of a lease which Levine had executed to the Kirbys. The initial inquiry is whether the negotiations culminated in an agreement to renew the existing lease and whether the agreement was binding upon Central Organization. Our review of the evidence convinces us that both of these questions must be answered in the affirmative.

The more difficult question is whether plaintiff has presented sufficient evidence to meet his burden of proof in this case. Plaintiff's complaint alleges that:

"* * * [T]he plaintiff has performed all of its obligations under said agreement, and the plaintiff has been damaged as a result of defendants and each of them refusing to perform their obligations under said agreement in an amount equal to the agreed and unpaid rental for the premises described in said lease. The defendants, and each of them, have not paid the said rental for the month of January, 1964, to the present date, amounting to $4,750, or any part thereof, although the payment of said rent has been demanded by the plaintiff."

At the trial plaintiff introduced evidence establishing the rent reserved in the agreement to renew the lease and then rested. No evidence was adduced to establish the market value of the leasehold. The trial court held that the measure of damages for the breach of an agreement to lease is the difference between the rent stipulated in the agreement and the reasonable rental value of the premises, and since plaintiff had failed to introduce evidence of the reasonable rental value there was no proof of damages. It is plaintiff's theory that he met his burden of proof by establishing the rent reserved in the agreement to lease and that defendants had the burden of proving that plaintiff could have mitigated the damages by leas-

ing the premises to others. In other words, plaintiff contends that the measure of damages is the difference between the rent reserved and the amount lessor actually receives as rental during the period of default, it being defendant lessee's burden to prove the amount so received. Plaintiff relies upon *H. S. & D. Inv. Co. v. McCool,* 139 Or 266, 9 P2d 809 (1932) as authority for this view, pointing specifically to the following language in that case:

> "* * * [In] an action to recover damages for breach of an agreement to enter into a lease * * * the true measure of general damages is the difference between the stipulated rental and the rental which plaintiff, through the exercise of reasonable diligence, was able to obtain * * *."

We do not interpret this language and the holding in *H. S. & D. Inv. Co. v. McCool,* as a pronouncement that plaintiff has only the burden of proving the rent reserved in order to recover on an agreement to lease. In another part of the opinion the court states the rule of damages as the difference between the stipulated rent " 'and the sum for which the premises would rent to other parties during the stipulated term,' " (139 Or at 272) indicating that the court regarded the rental value rather than the actual rent reserved as the subtrahend in computing damages.[1]

■ Plaintiff takes the position that no matter how the rule of damages is stated, defendant has the burden of proving that plaintiff could have mitigated his damages by leasing the premises to others. For this

---

[1] The court also said, "We see no material difference in principle between * * * [defendant's view] and the authorities above cited. After all, what the plaintiff, through the exercise of reasonable diligence, could have obtained as rental, would, in fact, be the reasonable rental value." H. S. & D. Inv. Co. v. McCool, 139 Or at 272.

proposition plaintiff relies upon the language in *Enco, Inc. v. F. C. Russell Co.,* 210 Or 324, 311 P2d 737 (1957), where the court held that the plaintiff had the duty to mitigate damages but that "the defendant has the burden of proving that such mitigation is possible." (210 Or at 339). The *Enco* case merely states the universally accepted rule that defendant has the duty of proving that mitigation of damages by the plaintiff was possible and did not address itself to the question presented to this court. The question now before us is whether plaintiff, in order to make out his case, is required to establish as the measure of his damages the difference between the stipulated rental and the reasonable rental value of the premises.

As pointed out in an annotation in 17 ALR2d 968, 969-970 (1951), the burden of proof may be allocated either to the plaintiff or to the defendant, depending upon which of the following views is taken:

"There are two basic views that may be taken toward the proposition: (1) The plaintiff makes out a case by proving the contract, the breach, and the value of the performance due him that the defendant did not render. If the case stops here the plaintiff is entitled to that value as proved damages; and any deduction that the defendant thinks should be made because of relief to the plaintiff is defensive in nature, like payment or offset, and it is part of the defendant's case to prove it. (2) But, on the other hand, it is entirely consonant with justice to say that the maximum of the plaintiff's recovery should be the minimum that will make him whole, place him in as favorable—but no more favorable—a position as he would occupy were full performance rendered by each party. If this is true, the plaintiff in proving the value of the defendant's performance does not prove damages at all in the case at hand. He proves them in a nonexistent,

hypothetical case. And not having proved damages in the case before the court, his recovery must be nominal." 17 ALR2d at 970.

Which of these views is accepted will depend in large measure upon the likelihood that plaintiff's loss can be avoided or reduced. Thus in an action on a personal service contract, it may be appropriate to allow the plaintiff to recover the contract price, unless defendant can show the availability of other jobs suitable to plaintiff's talent. The demand for certain skills varies according to the nature of the work and, therefore, it cannot be assumed that a person who loses his employment will readily find another job. This would explain *Quick v. Swing,* 53 Or 149, 99 P 418 (1909), which holds that "the burden of proving that, after the plaintiff was discharged, he could have secured other employment, and thus have reduced the damages which he claimed, to the extent of the wages received from other sources, was imposed upon the defendant." (53 Or at 153-154, 99 P at 420).[2] Other cases holding that plaintiff is prima facie entitled to recover the full contract price can be explained upon other grounds equally sound.[3]

But the rule is otherwise in those cases in which the plaintiff's loss is normally something less than the contract price. The most common of these cases are those in which the seller sues for a breach of contract to accept goods. The seller must prove more than simply

[2] The same principle has been applied in many other employment contract cases. See 17 ALR2d 968, 978 (1951).

[3] For example, cases involving advertising contracts, contracts for a course of instruction, motion picture rental contracts apply the rule stated in the text. Cases are collected and commented upon in 17 ALR2d 968 (1951).

the contract price. The explanation is stated in 3 Williston on Sales § 582, p. 243 (rev. ed 1948):

> "As the burden is upon the plaintiff to show what damage, if any, he has suffered, it is incumbent upon him, in order to make out a case for recovery of more than nominal damages, to show that the market value of the goods is less than the contract price."[4]

■ In several Oregon cases involving contracts other than for the sale of goods we have held that plaintiff must prove more than the contract price.[5] The principle applied in the cases involving contracts for the sale of goods and other contracts where the plaintiff's loss is normally less than the contract price, is equally applicable to contracts for the extension or renewal of a lease. In ordinary circumstances property which is the subject matter of a contract to execute or renew a lease can be leased to others upon the promissor's failure to accept the lease. Under such circumstances it is reasonable to assume, in the absence of proof to the contrary, that the lessor's loss is not the full amount of the stipulated rent but an amount which represents the difference between the stipulated rent and the rent which plaintiff would receive upon leasing the premises to others. If the plaintiff can show that there is no market for the leasehold, he can, of course, recover the entire amount of the rent reserved, but it is his burden to show this and if he does not, he has not made out his case. It was so held in *Branning Mfg. Co.*

---

[4] In addition to the cases cited in Williston in support of the text, see the cases collected in 17 ALR2d 968, 986 (1951).

[5] Upon a breach of contract where loss of profit is the measure of damages relied upon, such probable profits must be established by proof of data from which the extent of the profit, if any, may be computed. Hagestrom v. Sweeney, 60 Or 433, 119 P 725 (1912). See also, Johnson v. Homestead-Iron Dyke Mines Co., 98 Or 318, 193 P 1036 (1920).

*v. Norfolk-Southern R. Co.*, 138 Va 43, 121 SE 74 (1924).

It follows from what we have said that plaintiff was not entitled to recover the damages prayed for in his complaint. Plaintiff argues that he is at least entitled to nominal damages. We are unable to see how any good purpose would be served by the allowance of nominal damages in the present case. We endorse the view expressed in McCormick on Damages, p. 96 (1935):

"* * * [W]here neither (1) danger of prescription nor (2) substantial loss or injury nor (3) willful wrongdoing by defendant are established, * * * judgment should go for defendant straight out."[a]

Plaintiff moved to re-open the case after judgment had been entered for defendants. The motion was denied. Plaintiff contends that the trial court erred in denying the motion. We have repeatedly held that the re-opening of a case for the introduction of additional evidence rests in the sound discretion of the trial court.[b] We find no abuse of discretion in the present case.

The judgment of the trial court is affirmed.

---

[a] The author goes on to say: "While this is obviously contrary to the classical and prevailing view that, wherever a 'right' is violated, the person aggrieved is entitled to at least nominal damages, it has been already sanctioned in a few forward looking opinions, and it is believed that it will increasingly win acceptance." McCormick on Damages, p. 96 (1935). See Ketchum v. Albertson Bulb Gardens, 142 Wash 134, 252 P 523 (1927); Strait v. Wilkins, 23 Cal App 774, 139 P 911 (1914).

[b] Berry v. Seto, 222 Or 395, 352 P2d 733 (1960); Arbogast v. Pilot Rock Lbr. Co., 215 Or 579, 336 P2d 329, 72 ALR2d 712 (1959).