Argued December 7, 1971, affirmed January 26, 1972

DAVIS ET AL, *Appellants, v.* WILSON ET AL,
*Respondents.*
493 P2d 31

*Carlton D. Warren,* Portland, argued the cause for appellants. With him on the briefs were Solomon, Warren & Killeen, Portland.

*Thomas Cavanaugh,* Portland, argued the cause for respondents. With him on the brief were Schouboe & Cavanaugh, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is a suit by the lessors of real property to foreclose their security interest under a lease following abandonment of the property by the lessees and for an award of not only unpaid rental installments and attorney fees, but also for damages. Plaintiffs appeal from a decree under which their claim for damages was denied.

The principal issue on appeal is whether, under the facts of this case, the lessors are entitled to damages under the terms of a lease which provided that the defaulting lessees were liable, in addition to all unpaid rental installments, for:

"* * * the amount, if any, by which the rent for the entire remainder of the term, discounted to present value, as of the date of the re-entry, ex-

ceeds the fair rental value of said remainder of the terms as of said date."[1]

More specifically, the question is whether the lessors are entitled to a judgment for damages in that amount when the evidence showed that upon re-entry they entered into a new lease with another tenant at an increased rental, but after investing a substantial amount in the construction of a building on the property. There was no evidence of the fair rental value of the property, without the building, for its highest and best use and the evidence did not show what portion of the rental under the new lease was allocable to the original property, as compared with the portion allocable to the new building.[2]

Since plaintiffs' right to recover such damages depends upon the facts, we shall briefly summarize the evidence.

Plaintiffs are assignees of the interest of the lessors under a lease effective June 1, 1965, for two unimproved lots in Portland for "operation of a self-service car wash," and for no other purpose. The car wash building and equipment was installed and paid for by the defendants, as lessees, at an initial cost of $25,000. The lease was for a term of 10 years, at a monthly rental of $325 "net," with taxes to be paid by the defendants, as lessees.

---

[1] Although this lease provision is referred to by plaintiffs as one for "liquidated damages," it is in fact a provision which provides a method for determining the measure of damages for breach of the lease by the lessee in accord with the decisions of this court in Wright v. Baumann, 239 Or 410, 398 P2d 119 (1965), and Kulm v. Coast-To-Coast Stores, 248 Or 436, 432 P2d 1006 (1967).

[2] Plaintiffs also assign as error the failure of the trial court to allow a deduction for the cost of storage pending litigation. Since, however, plaintiffs neither pleaded nor proved the amount paid for that purpose, that assignment of error has no merit.

Defendants then subleased the property. The car wash venture failed and defendants did not pay the rent due on March 1, 1969, after which the property was tendered back to the plaintiffs, who refused to accept it. Plaintiffs also refused to permit defendants to remove the car wash building and equipment and operate the property as a parking lot. The property was then abandoned by the defendants and their subtenants.

In June 1969 plaintiffs listed the property with a realtor, who was unable to find a tenant to take over the old lease for a car wash operation, but eventually found a tenant willing to lease the property for a "fish and chip" establishment, provided that the lessors would construct a building for that purpose.

On December 2, 1969, plaintiffs retook possession, expended $40,000 on a new building, and leased the land and building to the new tenant for a term of 15 years, at a monthly rental of $725, also "net." Plaintiffs also expended some $10,000 in real estate commissions and for other purposes.

Plaintiffs' realtor testified, on cross-examination, that at the monthly rental of $725 per month "that land, plus the structure on it and the rent that it is yielding at this time is a fair rental value for the property from the time of the lease on." He also testified that the new building was a "special purpose" building that would be expensive to convert for other use, justifying a "somewhat higher rent" because of that risk. Plaintiffs' realtor also testified that as a car wash operation the property had a rental value of $225 and that for a parking lot its rental value was between $125 and $175 per month.

For the purposes of computing their claim for

damages, plaintiffs assumed that the fair rental value of the property for the remainder of the term of the original lease was $270 per month, resulting in a difference of $55 per month between that amount and the rental payments of $325 per month as provided by that lease. Thus, plaintiffs contend that under the terms of the lease they are entitled to $8,459 in damages as the discounted present value of that difference for the remainder of the term of that lease.

Defendants do not deny the correctness of that computation, but deny that plaintiffs are entitled to any such payment, contending that since plaintiffs admitted that they receive $725 per month under the new lease (or $400 per month more than the rental payments of $325 under the old lease) and that this is a reasonable and fair rental for the property, including the new building, it follows that plaintiffs have suffered no loss or damage. The trial court agreed with that position and denied plaintiffs' claim for damages.

In *Wright v. Baumann,* 239 Or 410, 398 P2d 119, 21 ALR3d 527 (1965), this court held (at p 415), for the first time in Oregon, that upon the abandonment by a tenant of leased property the lessor cannot "* * * stand idly by the vacant, abandoned premises and treat them as the property of the tenant and recover full rent, * * *" but has an obligation to mitigate his damages, at least by the acceptance of a "suitable substitute tenant" when presented by the original tenant. In so holding, this court applied, in a case involving the breach by a tenant of an existing and executed lease, the same rule applicable in cases involving breach by a prospective tenant of a contract to make a lease.

In *Kulm v. Coast-To-Coast Stores,* 248 Or 436, 432 P2d 1006 (1967), an action for damages for breach of a contract to renew a lease, this court recognized (at p 440) the general rule that a defendant in an action for damages for breach of contract has the burden of proving that "mitigation is possible." The court distinguished, however, between that burden of proof and the burden of proof of a plaintiff in an action for damages for breach of contract to prove that he was damaged and the amount of such damages. Thus, this court in *Kulm* quoted with approval (at p 442) from 3 Williston on Sales 243, § 582 (1948), as follows:

"* * * As the burden is upon the plaintiff to show what damage, if any, he has suffered, it is incumbent upon him, in order to make out a case for recovery of more than nominal damages, to show that the market value of the goods is less than the contract price."

This court then went on to hold (at p 442):

"* * * In ordinary circumstances property which is the subject matter of a contract to execute or renew a lease can be leased to others upon the promissor's failure to accept the lease. Under such circumstances it is reasonable to assume, in the absence of proof to the contrary, that the lessor's loss is not the full amount of the stipulated rent but an amount which represents the difference between the stipulated rent and the rent which plaintiff would receive upon leasing the premises to others. If the plaintiff can show that there is no market for the leasehold, he can, of course, recover the entire amount of the rent reserved, but it is his burden to show this and if he does not, he has not made out his case. * * *"[9]

---

[9] This court in *Kulm* also (at p 442, n. 5) analogized breach of contract cases in which loss of profit is the measure of damages and it held that such probable profits must be established

In *Kulm,* the plaintiff proved only the amount of the rental payments provided for in that contract. He contended that defendant had the burden of proving that plaintiff could have mitigated damages by leasing the property to others. He also contended that the measure of damages was the difference between the rent reserved in the lease and the rentals actually received during the period of default, and that defendant had the burden to prove the amount so received. In that case, plaintiff failed to offer evidence sufficient to establish what, if any, loss and damages he had suffered in that he failed to show either that the property had no market value or that the market value was less than the rental payments as provided by the lease. For that reason we held in *Kulm* that the plaintiff failed to sustain his burden of proof and was not entitled to recover any of the damages prayed for by his complaint. We also affirmed the denial by the trial court of plaintiff's motion to reopen that case for

by proof of data from which the extent of the profit, if any, may be computed, citing Hagestrom v. Sweeney, 60 Or 433, 436, 119 P 725 (1912) (holding that the opinion of a witness as to the amount of profits that would have been made under a contract is insufficient), and Johnson v. Homestead-Iron Dyke Mines Co., 98 Or 318, 193 P 1036 (1920).

Such a result is in accord with the rule as set forth in the Restatement of Contracts 515, § 331 (1932), as follows:

"(1) Damages are recoverable for losses caused or for profits *and other gains prevented by the breach* only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty.

"(2) Where the evidence does not afford a sufficient basis for a direct estimation of profits, but the breach is one that prevents the use and operation of property from which profits would have been made, *damages may be measured by the rental value of the property* or by interest on the value of the property." (Emphasis added)

See also Douglas Const. v. Mazama Timber, 256 Or 107, 112-14, 471 P2d 768, 770-71 (1970), and Annot., 21 ALR3d 534, 577 (1968).

further evidence after judgment had been entered for the defendant.

■ In this case the question whether defendants sustained their burden to prove that mitigation of damages was possible by rental of the property to another tenant was resolved by the fact that, according to the record, plaintiffs were not only able to, but did, rent the property to another tenant. The question remains, however, whether, for the purpose of establishing their claim for damages, plaintiffs sustained their burden to prove that the fair rental value of the property was less than the amount of the rental payments provided for under the original lease.

Since, in this case, plaintiffs had actually released the property to a new tenant they also had the burden to prove that the amount received in rent for the property from the new tenant was less than the amount of rental payments provided for under the original lease, and, if so, by what amount. This is so because if the rental payments received for the property from the new tenant were equal to or greater than the amount of the rental payments provided for under the original lease, it is obvious that plaintiffs would have suffered no loss or damage (other than perhaps for expenses incurred in re-leasing the premises).

As previously stated, plaintiffs' expert witness testified that the fair rental value of the premises (with the car wash building and equipment removed) for use as a parking lot was from $125 to a maximum of $175 per month and that its fair rental value for use as a car wash was $225 per month. He also testified that the rental of $725, per month, as received from the new tenant, was "a fair rental value for the property from the time of the [new] lease on" includ-

ing the new building, for use as a "fish and chip" establishment.

No evidence was offered, however, of the fair rental value of the land, prior to construction of the new building, based upon an evaluation of its "highest and best use." On the contrary, plaintiffs' expert witness testified that the rental value of the property "* * * is determined by what we can make it produce. And the rental value of the property as a car wash and self-service car wash was obviously far from being its highest and best use * * *." It follows, for this reason, that plaintiffs failed to sustain their burden of proof.

For the purpose of computing their claim for damages plaintiffs "used" $270 as the fair rental value of the property, before construction of the new building for the "fish and chip" establishment. There was no testimony or other evidence, however, to support the contention that $270 per month represented the "fair rental value" of the property for its highest and best use at that time.

It may be that the rental of $725 per month under the new lease represents the fair market value of both the land and the new building for use as a "fish and chip" establishment and that this may represent the "highest and best use" of that property, including the new building. But in the absence of some evidence, there is no basis to determine from the record in this case what portion or amount of that total rent was attributable to the land, as distinguished from the new building.

■ It is true, as contended by plaintiffs that since they undertook the risk involved in the investment of some $40,000 in a new "special type" building, they

are not required to share with defendants the benefit of the additional rental received by them as the result of that investment. See Williston, *supra,* 267, § 588 and 5 Corbin on Contracts 264, 316-17, §§ 1042, 1053 (1964). But if $325 or more of the total rent of $725 was attributable to the unimproved land, as distinguished from the new building, plaintiffs would have suffered no loss or damage, since the rental payments under the old lease were in the sum of $325 per month.

In apparent recognition of this problem plaintiffs contend in their reply brief on this appeal that "a reference to any standard table of monthly amortization rates" shows that $50,000 over 15 years [the term of the new lease], monthly payments, at 8% equals $477.90 per month," and that after deducting that amount from the monthly rental of $725 under the new lease, a balance of $247.10 remains "to apply to defendants' lease," leaving a "shortage" of $77.90 per month after deducting that amount from the monthly rental of $325 under the old lease. By comparison, plaintiffs "* * * only asked that the court consider $270 per month, leaving a damage figure to plaintiffs of $55 per month * * *" for the purpose of computing their claim for damages.

There is no evidence, however, that 8% was the going rate of interest at that time for such purposes or, if so, that plaintiffs were entitled to the application of such a rate of interest to the full sum of $50,000, which represents, without itemization, the total amount of all expenses claimed to have been incurred by plaintiffs, including, but not limited to, the amount invested in the new building. In addition, the issue in this case is the fair rental value of the property prior to construction of the new building, rather than the

fair return upon an investment for the new building. The former is not necessarily computed by a deduction of the latter from the gross rental received for both the land and the new building.

Accordingly, we hold that plaintiffs failed to sustain their burden of proof because they failed to prove the fair rental value of the property prior to construction of the new building and also because they failed to prove that the rental payments received by them under the new lease for that property did not exceed the monthly payments under the original lease. It follows that the trial judge did not err in denying plaintiffs' claim for damages under the terms of the lease.

Affirmed.