Argued February 9, affirmed May 17, 1973

MILLER ET UX, *Respondents-Cross-Appellants, v.*
DER WIENERSCHNITZEL INTERNATIONAL,
INC., *Appellant.*

509 P2d 1170

*James H. Anderson,* Eugene, argued the cause for appellant. On the briefs were Thompson, Mumford & Woodrich.

*Merwin C. Logan* of Moore, Wurtz & Logan, Springfield, argued the cause for respondents-cross-appellants. On the brief were Gildea, Speer & McGavic, P.C., and Stephen R. Blixseth, Eugene.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, TONGUE, HOWELL and BRYSON, Justices.

McALLISTER, J.

The plaintiffs, as lessors, brought this action against their lessee, Der Wienerschnitzel International, Inc., for damages for breach of lease. The court tried the case *sans* jury and held for plaintiffs. Defendant appeals and plaintiffs cross appeal.

Defendant concedes that it breached the lease and objects only to the amount of damages awarded.

Plaintiffs bought a parcel of land in Eugene shortly after their predecessor had leased it to defendant and are the assignees of the lessor's interest in the lease. The lease required the lessor to construct on the premises, according to defendant's plans and specifications, a building to cost about $40,000. The lease was for a 20-year term at an agreed rental of $880 per month and was dated August 1, 1969. Defendant was to use the premises as a drive-in frankfurter restaurant. Plaintiffs did not construct the building because defendant never furnished them with any plans and specifications.

Late in 1969 plaintiffs learned that defendant did not intend to perform under the lease. Sometime in 1970 plaintiffs leased the premises to a new tenant for a fish and chips restaurant. Pursuant to the new lease plaintiffs built a building at a cost of $33,070.82 and received a monthly rental of $785.71 per month.

The record does not disclose exactly when the new lease was executed, but there is evidence that construction on the building commenced in 1970 and that the new tenant took possession on March 28, 1971.

In addition to the cost of the building plaintiffs paid $5,500 to a real estate broker as a commission for obtaining the new tenant and $410 in attorney's fees incurred in connection with the new lease.

■ Defendant first contends that the court erred in awarding plaintiffs "the full amount of the reserved rent from August 15, 1970 through March 1, 1971." Although defendant's lease was dated August 15, 1969, it provided that the 20-year term was to begin:

> "* * * (a) the date that the Der Wienerschnitzel restaurant to be constructed hereunder by Tenant [sic] is first opened for business; or (b) fifteen (15) days after completion of improvements; or (c) one (1) year from the date of signing hereof, whichever event shall first occur."

Defendant argues that the monthly rental was to be paid for the land plus a building and that since the building was never built defendant should have been charged rental only for the land. This contention is answered by the provisions of the lease. The lease provides for payment of monthly rental in the amount of $880 for the term of the lease and the provision quoted above provides that the term was to begin a year from the date of execution even if the building was not yet completed.

Defendant relies on *Davis v. Wilson,* 261 Or 137, 493 P2d 31 (1972), in which the lessors' failure to prove the reasonable rental value of the land alone was held to prevent their recovery of damages. In that case, however, the original lease which the defendants breached was for the land alone. In the present case the original lease provided a rental amount for the land plus the prospective improvements. Since the building was not constructed solely because of defend-

ant's default and since there is no contention that plaintiffs were not diligent in finding a new tenant, we hold that the trial court did not err in computing the damages for this initial period. Defendant's breach resulted in plaintiffs' loss of the rent reserved in the lease during the period from August 15, 1970, until the land and new building were ready for occupancy by the new tenant.

■ Defendant next contends that it was error to award the plaintiffs any damages at all for the period after the new tenant took possession of the premises. The trial court awarded plaintiffs the difference between the two rental figures reduced to present value for the remainder of the term of the original lease less the amount of plaintiffs' savings in capital expenditures. Defendant argues that, although plaintiffs received a smaller rental under the new lease, they suffered no damage because they spent only $33,070.82 on the building for the new tenant instead of at least $40,000 contemplated by the original lease.[1]

Defendant apparently concedes that the plaintiffs' expert used the proper formula to compute the reasonable rental value of the premises. Plaintiffs' expert witness testified that in the fast food industry the annual rental under a "net" lease of this type is generally computed by adding the cost of the land, the cost of the building, and any incidental capital expendi-

---

[1] Both parties rely on three recent cases as embodying the law applicable to this case. Davis v. Wilson, supra; Kulm v. Coast-to-Coast Stores, 248 Or 436, 432 P2d 1006 (1967); Wright v. Baumann, 239 Or 410, 398 P2d 119, 21 ALR3d 527 (1965). In *Kulm* we held that the proper measure of the lessor's damages is the difference between the rent reserved in the lease and the reasonable rental value of the premises for the remainder of the term. 248 Or at 442. This measure of damages was reaffirmed in Davis v. Wilson, supra.

tures, and applying a percentage figure to this total. As a rule of thumb, he testified, the percentage used is the loan interest rate plus 2.5 per cent. The current interest rate at all times relevant to this case was 9.5 per cent, so that the percentage used in this formula would be 12 per cent under both leases.

Defendant argues that the difference between the agreed rental under its lease of $880 per month and the rental under the new lease of $785.71 per month was based solely on the lesser cost to plaintiffs of the building for the new tenant. Defendant's argument would be sound except that it overlooks the additional costs incurred by plaintiff in procuring a new tenant—the broker's fee of $5,500 and the attorney's fee of $410. When these costs of $5,910 are added to the cost of the land and building plaintiffs' expenditures total $38,980.82, or only $1,019.18 less than their contemplated expense under defendant's lease. Thus plaintiffs would have received, under defendant's lease with an expenditure of $40,000, rental of $880 per month, but under the new lease, with an expenditure of $38,980.82, plaintiffs received only $785.71, or $94.29 per month less rental. The trial court adjusted the effect of the difference of $1,019.18 in capital expenditures by giving defendant an immediate credit for this amount on the damages it owed plaintiffs.

In essence, defendant argues that plaintiffs were not entitled to capitalize the $5,910 expended for broker's and attorney's fees in computing the reasonable rental value of the premises. The trial court found, however, that defendant was responsible for these admittedly reasonable expenses and we agree. Defendant has not challenged the accounting method used by the trial court in computing defendant's damages and, in the absence of any such challenge, we need not con-

sider that aspect of the judgment. This is an action at law and we need consider only errors of law properly assigned by the defendant.

■ Finally, defendant contends that the trial court was in error in including certain of plaintiffs' attorney fees in its computations. Specifically, defendant complains of $114 related to negotiations about the location of a power pole, $3 for recording plaintiffs' deed, and $10 for negotiating an increased rental with the new tenant. It is true, as defendant points out, that the evidence does not establish that the first two items were incurred as a result of defendant's breach. The trial court found, however, that all were necessary expenses in connection with obtaining a new tenant and that plantiffs were entitled to treat them as capital costs in the computation of their total investment. Although the propriety of including the $3 recording fee in that computation may be debatable, the amount involved is *de minimis* and we will not disturb the judgment on that account.

■ Plaintiffs on cross-appeal contend that the trial court erroneously refused to credit them with two other items of expense—approximately $700 in real property taxes and $372.56 in interest. We find no error. The evidence as to taxes was too indefinite to permit the court to determine the amount allocable to defendant under its lease. Interest, under the rental formula, was not to be treated as a capital cost. The trial court was correct in refusing to include it in its computations.

The judgment is affirmed.