Argued July 10, reversed and remanded September 5, 1975

# MT. BACHELOR, INC. et al, *Respondent, v.*
# DEPARTMENT OF REVENUE, *Appellant.*
### 539 P2d 653

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and Walter J. Apley, Assistant Attorney General, Salem.

*R. L. Marceau* of Panner, Johnson, Marceau & Karnopp, Bend, argued the cause and filed a brief for respondent.

O'CONNELL, C. J.

This is an appeal from a decree of the Oregon Tax Court which reversed an order of the Oregon Department of Revenue establishing the assessed valuation of plaintiff's interest in real property located near Bend in Deschutes County, Oregon.[1]

Plaintiff's property was originally valued by the county assessor at $888,500 for January 1, 1970, and $1,298,500 for January 1, 1971, by the depreciated

[1] Mt. Bachelor, Inc. v. Department of Revenue, 5 OTR 526 (1974).

replacement cost approach.[2] Plaintiff appealed to defendant Department of Revenue, contending that depreciated replacement cost did not accurately reflect true cash value and that a proper evaluation by means of capitalizing net income yielded a true cash value of $641,009 for January 1, 1970, and $692,483 for January 1, 1971. Defendant rejected plaintiff's contention and affirmed the assessments.[3]

Plaintiff then brought this suit in the Tax Court, seeking to reduce the valuation. In the Tax Court defendant conceded that the income approach to value was the only proper method of valuation in this case. The Tax Court reversed defendant's order and established the true cash value of the subject property at $558,301 for 1970, which was arrived at by capitalizing the 1969 income, and $889,339 for 1971, by capitalizing the 1970 income. Defendant appeals, alleging as error the Tax Court's capitalization of the income for 1969 and 1970 in arriving at the value for the years 1970 and 1971 respectively. In countering this, plaintiff contends that the Tax Court erred in the debt to equity ratio and the real to personal property ratio used to establish the capitalization ratio.

Plaintiff's property is a ski resort located on Mt. Bachelor near Bend, Oregon. The property consists of a day lodge and parking lot and a number of ski lifts, all located on United States government land under annual permit from the United States Forest Service. The parties agree that the land is subject to taxation as though owned in fee, subject only to deduction for restrictions in its use.[4] The capitalization

---

[2] This method of valuation is described in American Institute of Real Estate Appraisers, *Appraisal of Real Property,* ch 14 (1967).

[3] Dept. of Rev., Order Nos. VL 72-201 and VL 72-202.

[4] *See* ORS 307.060. Ore. Summer Hm. Owners v. Johnson, 265 Or 444, 510 P2d 344 (1973).

of income approach automatically takes such restrictions into account.

The first operational year of the property was the 1958-59 ski season. Thus, there is a substantial income history upon which a determination of value by capitalizing the income stream may be predicated.

Plaintiff and defendant each called as a witness an expert appraiser to testify as to the valuation of the property based on the income approach. Although the two experts are in agreement upon the fundamentals of the income approach to value, they disagree on the application of that method to the property in question.[5] Each expert estimated an expectable annual income based upon plaintiff's earnings history. Each then divided the income into portions attributable to equity capital and to debt financing components of total value and assigned a discount rate to each. The appropriate discount rate for the debt component was agreed to be 8½ percent.

The parties' experts disagree, however, on the proper estimate for future income, the proper ratio of debt to equity, and the proper ratio of real property to personal property. We take up each area of dispute in turn.[6]

Plaintiff's expert witness used the income from the prior fiscal year to arrive at the value of the property, whereas defendant's expert used the income for the fiscal year ending after the assessment date to arrive at his estimate of the value of the property.

Defendant attacks plaintiff's application of the income approach because it looks only to the income actually produced in the fiscal period prior to the as-

[5] *See* American Institute of Real Estate Appraisers, *Appraisal Terminology and Handbook*, 105 (5th ed 1967).

[6] For a detailed explanation of the income approach and the methods employed by the parties' experts, see the opinion of the Tax Court, 5 OTR at 529-539.

sessment date without taking account of the growth factor attributable to a demonstrated rising trend in receipts, the prospect of increased revenue from an additional ski lift installed in the summer of 1970, and a 20% increase in the price of ski lift tickets for the 1970-71 ski season.

Plaintiff attacks defendant's application of the income approach on the ground that it employs evidence of the income producing capability of the ski resort which could not be known by a prospective purchaser on the assessment date, and therefore such additional income would not influence such a purchaser to pay a correspondingly higher price for the property. Defendant responds to this criticism by pointing to the testimony of defendant's expert witness who explained that he did not use the income for fiscal 1969-70 and fiscal 1970-71 as the beginning point for his calculations for the respective evaluations. Defendant's expert testified that his estimate of future income based upon the growth factors previously mentioned resulted in an amount slightly higher than the actual amount produced during that period and for this reason he simply accepted the actual amount as a matter of convenience. He testified on cross-examination, as follows:

"Q You did not put yourself in the position of someone making an estimate on January 1, 1970, and seeing what the estimate would be?

"A I did and I should have put it in as part of the report, Mr. Marceau.

"Q And your estimate happened to come out exactly the same as the financial data for that year that was not known until July 31st of that year. Is that correct?

"A No, it didn't come out exactly. It came out a little higher, but I don't recall exactly what it was.

"Q Ski lift revenue?

"A My—the projections that I made and I don't have them with me and I don't recall the dollar amounts but I remember that when I projected it based upon growth that I expected, why it was a little bit higher than what the actual ones were and I used the actual ones."

Accepting as true the explanation given by defendant's expert, his method comports with the theory of capitalizing income to find the value of property. The Tax Court rejected defendant's appraisal in this respect and accepted the method employed by plaintiff's witness, reasoning that:

"The use of the prior fiscal year will avoid the use of hindsight or speculation as to the operation after the assessment date and will use only data which would be available to the county assessor."

As we have already noted, defendant's witness was not guilty of using hindsight in making his estimate; the fiscal year income straddling the assessment date represented the approximate amount of income defendant's witness forecasted as a result of the rising trend in the previous income. If the Tax Court had reason to believe that the factor of growth was not the basis for the witness' estimate, the appraisal would be unacceptable on that ground. But it does not appear that the Tax Court rejected the estimate on that ground. It appears, rather, that the court felt that its choice in the present case lay between accepting one method which employed past income and another method which employed future income. In an effort to avoid the use of hindsight, the Tax Court accepted the plaintiff's employment of past earnings which failed to take into consideration the effect of the growth factor on the subsequent flow of income. This was error.

The income approach consists of the capitalization of anticipated *future* earnings. The assessor must

determine the flow of income that would be anticipated by reasonable, knowledgeable buyers and sellers as of the assessment date. Needless to say, the primary factual basis of a reasoned prediction of future income is the past earning performance of the subject property. As significant, however, is the rate of change of past income. There can be no question that the market price of a property will be greater if its earnings have been rising and market conditions, improved facilities, and increased prices all promise a continued, if not accelerating, rising trend.

This is precisely the case of plaintiff's property. Plaintiff's receipts have increased steadily and substantially since it began operations.[7] The addition of a fourth chair lift in 1970 could be expected to yield substantial new revenues as could the increased lift ticket price in 1970. Moreover, based on facts which would have been known to buyers and sellers on the assessment date, there was good reason to believe that the demand for ski facilities of the Mt. Bachelor type was rising.

■ Thus, we believe that the use of net income of the previous year unmodified to take the various indicators of rising income into account was in error. We therefore reject the net income figure employed by plaintiff's expert and by the Tax Court and adopt that of defendant's expert. In so doing, we do not suggest that the actual income of the tax year in question, inherently unknowable to the assessor on the assessment date, is the proper predictor of anticipated income. Rather, we accept defendant's testimony that

---

[7] Lift ticket receipts which comprise the bulk of total revenues are indicative of this rising trend:

| | |
|---|---|
| 1965-1966 | $138,270 |
| 1966-1967 | 269,485 |
| 1967-1968 | 280,908 |
| 1968-1969 | 323,145 |
| 1969-1970 | 408,555 |
| 1970-1971 | 615,432 |

the actual income was slightly less than that predicted and was employed as a concession to plaintiff.

■ Plaintiff argues that the indicators of rising income should not be considered in projecting future income in this case because of the dependence of the skiing industry in general and of Mt. Bachelor in particular upon favorable weather conditions which are unpredictable. Defendant does not dispute that a ski resort is a risky business, but points out that the annual variation of income due to seasonal factors is taken into account in the risk factor included in the capitalization rate. Defendant is correct in its treatment of the risk factor. It is noteworthy that the capitalization rate employed by the Tax Court assumes a 25% return on equity capital.[8] This rate of return adequately recognizes the high element of risk inherent in dependence upon the weather and skiing conditions. The rate appears to us as favorable to plaintiff, especially in light of the fact that plaintiff's income has increased every year for many years.

■ Plaintiff also contends that in estimating what a willing purchaser would pay for its property interest the court should take into account the fact that "[s]ki area operation is not an industry which attracts businessmen on the basis of the usual profit motive," and that those who are interested in this kind of an enterprise are ski enthusiasts. Thus it is argued, "[t]here is a strong element of emotion involved in a decision to invest in a ski area." We find this argument unconvincing. Plaintiff's property, like all real property in this state, must be valued at its true cash value.[9] This value has been determined in the present

[8] Defendant's own expert employed a 20% rate. On appeal, defendant did not challenge the court's selection of plaintiff's choice of 25% until its reply brief. Although 25% is a very high rate, we believe that it is somewhat better supported by the record than 20% and accept the Tax Court's position.

[9] ORS 308.232.

case by reference to the price an investor would pay to obtain the income it can be expected to produce. If the property in question can in the future produce the income forecast by defendant, we see no reason why a prospective purchaser, even though not a ski enthusiast, would not be interested in the property as an investment.

■ The second question on appeal is the proper ratio of debt to equity as a component in fixing the capitalization rate. The Tax Court adopted the view taken by defendant's appraiser that the capitalization rate should be weighted on the basis of 70% debt and 30% equity. This ratio is predicated upon the position that a prospective purchaser of plaintiff's ski resort area could borrow 70% of the purchase price. Plaintiff's expert witness expressed the opinion that a purchaser could finance no more than 50% of the purchase price from commercial lenders, which would establish a 50 to 50, or one-to-one debt-equity ratio. With respect to this assertion, the Tax Court said, "The witness' concept of the equity-debt ratio as being one-to-one appeared not to be borne out by the facts or by the insubstantial statistical data used by him." (5 OTR at 539). We agree. Plaintiff's witness based his conclusion on general data relating to the financing of ski areas in other states; he did not make any specific inquiry as to the amount of capital available to a prospective purchaser in the Mt. Bachelor area or any comparable type of risk. In contrast, defendant's witness reached his conclusion by questioning lenders and others active in the financing of real estate developments regarded as involving a business risk similar to that which would face a purchaser of the Mt. Bachelor ski area.[10] We hold, therefore, that plain-

---

[10] Contrary to plaintiff's contention, the strength of defendant's evidence is not lessened by the fact that the 70/30 ratio assumes a personal guarantee by the buyer. The evidence supports the

tiff did not carry its burden of proof on the issue of the proper debt-equity ratio.

■ The final point of disagreement raised on appeal is the proper allocation between real property improvements and personal property incorporated into the capitalization rate. Defendant's expert assumed that personal property was 10% of the total value. Plaintiff's expert utilized the assessor's valuation of personal property and calculated that personal property made up 14% of the total property. The Tax Court initially questioned the propriety of defendant's assumption of a real and personal property ratio of 90 to 10 and in its written opinion upon its remand to defendant with directions to recalculate its valuation, stated that "[s]ome further studies should be made to determine whether the witness' assumption that the allocation * * * should be 10 percent for personal property and 90 percent for real property and the best founded conclusions should be utilized."[⊕] As far as the record reveals, further studies were not made and after hearing on the recalculation the court accepted a recalculation incorporating defendant's 10% personal property assumption without stating any reason.

We find no justification in the record for the acceptance of an apparently arbitrary estimate of the ratio of real and personal property. The county assessor's actual valuation of personal property has not been criticized by defendant. Defendant has had ample opportunity to defend the use of its arbitrary estimate of a known quantity before the Tax Court and before

conclusion that no loan would be available for purchase of plaintiff's property without the personal guarantee of the buyer. Plaintiff's no guarantee position, then, effectively assumes a cash sale which is totally inconsistent with practice in the market for real estate investments of the present magnitude.

⊕ See 5 OTR at 536 and 540.

us on appeal and has not chosen to do so. We hold, therefore, that the appraised value of personal property should be used in the valuation of plaintiff's property.

The decree of the Tax Court is reversed and remanded for further proceedings consistent with this opinion.