DECISION
Plaintiff appeals the real market value of commercial property identified as Accounts 134786 and 134787 (subject property) for the 2009-10 tax year. A trial was held by telephone on January 26, 2011. Robert Curtis Muth, Attorney at Law, appeared on behalf of Plaintiff. Richard Scott Smith (Smith), managing member of Plaintiff, and Peter Storten (Storten), a licensed real estate broker in Sisters, Oregon, testified on behalf of Plaintiff. Sharra Tisiot (Tisiot), Registered Appraiser, Deschutes County Assessor's Office, appeared and testified on behalf of Defendant. Neither Plaintiff nor Defendant submitted exhibits for trial.
 I. STATEMENT OF FACTS
A. Real Market Value as of January 1, 2009
The subject property is a two-story office building located at 220 SW Pine Street in Sisters, Oregon. Plaintiff purchased the subject property in 2003. Smith testified that the subject property is a well-constructed building containing approximately 16,800 square feet of usable space divided into multiple, independent office spaces. For the 2009-10 tax year, the assessor set the subject property's real market value at $2,475,740 and assessed value at $1,480,610. The board of property tax appeals (board) sustained those values. *Page 2 
Smith testified that the subject property is currently occupied at 40 percent. Smith testified that GMAC Financial and Amerititle are current "anchor tenants." Two of the 2003 "anchor tenants," the Sisters School District and the Multnomah Publishing Company, moved out in 2004 or 2005. Plaintiff lost its final "anchor tenant" from 2003 in 2007. He testified that the building has been continuously listed for lease in the Sisters newspaper, the Multiple Listing Service, and on the website Craigslist. Smith testified that the subject property was listed for sale for $1.85 million in 2007-08 and for $1.65 million in 2009. Smith received no offers prior to 2009 and has received no offers since the beginning of 2009. Tisiot testified that she verified the subject property was listed for $1.8 million dollars on January 1, 2009, and for $1.65 million in late 2010.
Smith provided testimony concerning the Sisters real estate market. He testified that, for the past 10 years, he has been building residential developments and homes and, from 1999 through 2005, he was a resident of Sisters. He that testified he has personal knowledge of the Sisters real estate market and of the severe depreciation in the market in the past several years. He testified that the period of time from 2003 to 2005 was characterized by significant appreciation in demand for commercial property in the Sisters market. From 2005 through the present, the Sisters market has depreciated substantially. He testified that high vacancy rates and decreased property values are readily apparent throughout both the Sisters and Bend markets. Smith testified that, despite the substantial decline in the Sisters market, Defendant increased the real market value of the subject property by 19.3 percent between 2007 and 2011.
Storten is a real estate broker with 18 years of experience; two years in Bend, Oregon, and 16 in Sisters. He is the broker of record for the City of Sisters as well as the owner, operator, and principal broker of the Sisters ReMax office. He serves as the manager and representative *Page 3 
for the subject property. In that capacity, he searches for and works with tenants, negotiates leases, and maintains the books for Plaintiff. He testified concerning the Sisters market from 2006 through the present. He testified that no major commercial buildings have been sold. He testified that the vacancy rate in the commercial property market in Sisters was approximately 40 percent as of January 1, 2009. He has observed "an absolute decline" in the rents for new leases as well as for re-negotiated leases. He testified that central Oregon was hit harder by the recession than many other places in the country due to the earlier property boom and overbuilding in the region.
Storten testified that, of the three approaches to valuation, the income approach is the most suited for commercial properties because income is what buyers consider when deciding whether to purchase a commercial property. Storten provided his opinion of the subject property's value under the income approach. He testified that, as of December 31, 2008, the subject property's annual income was $96,313 and its total annual expenses were $78,198, resulting in a net operating income of $18,100, rounded. Storten did not recall specific information concerning the subject property's net operating income in previous years, though he testified that the subject property had never achieved 100 percent occupancy. Storten testified that, based on the current market, a six percent capitalization rate is good. Using a capitalization rate of six percent, Storten testified that the value under the income approach is approximately $302,000.
Plaintiff submitted with its Complaint a "Summary Appraisal Report" (appraisal report) prepared by Joseph B. Skilton (Skilton) and W. Paul Jackson, MAI, of Cassinelli Jackson LLC. Skilton, who prepared the report, was unavailable to testify at the trial. Smith testified that the appraisal report concluded an "as-is leased fee value" of $1,340,000, as of June 19, 2009. Smith *Page 4 
testified that the appraisal report was ordered by MT Bank because Plaintiff used the subject property as collateral for a loan in 2009. Smith testified that he is familiar with Cassinelli Jackson LLC and that it has an excellent reputation.
Tisiot testified that Defendant performed a complete reappraisal of the Sisters properties for January 1, 2009. The appraiser who completed the reappraisal was Don Lutz (Lutz), who has since retired. The reappraisal was prepared using confidential surveys of business owners in the Sisters area.[1] Tisiot testified that she submitted an appraisal report to the board in which she relied on the income approach, but also considered the sales comparison approach.[2] Based on the sales comparison approach, Tisiot concluded a value of approximately $140 per square foot for the subject property, excluding the cellular site (cell site) added to the property by Verizon/RCC Atlantic in 2007-08. She testified that her comparable sales, which were not extracted from the appraisal report prepared by Lutz, ranged from $131 to $275 per square foot. Tisiot testified that, in September 2010, Defendant offered Plaintiff a proposed stipulated value of $1,940,140, or $108.38 per square foot. Tisiot testified that Plaintiff's requested value works out to $80.34 per square foot.
Plaintiff requests a 2009-10 real market value of no more than $1,340,000, which is the value indicated by Plaintiff's appraisal report. Defendant asks that the court sustain the 2009-10 real market value of $2,475,740, which is the value set by the assessor and sustained by the board, but would accept the value of $1,940,140 offered to Plaintiff in September 2010. *Page 5 
B. Increases in Maximum Assessed Value
Smith testified that the maximum assessed value of the subject property increased by 6.2 percent in the 2007-08 tax year, by 3.4 percent in the 2008-09 tax year, and by 2.9 percent in the 2009-10 tax year. Smith testified that no improvements were made to the subject property between the time Plaintiff purchased it in 2003 through the present. Tisiot testified that the nine percent increase in the 2007-08 maximum assessed value was due to the addition of a cell site on the subject property and the 3.6 percent increase in 2008-09 maximum assessed value was due to the addition of a generator on the subject property.
Smith testified that, at some point during the 2007-08 year, Verizon/RCC Atlantic leased a small space in the subject property for a transmitting station and obtained a permit from the city planning commission to put an antenna on the roof of the subject property. Verizon/RCC Atlantic paid the costs associated with installing the cell site. It cannot be used by other tenants. Smith testified that the cell site is not an "improvement" because it will not be left with the subject property when Verizon/RCC Atlantic's lease ends and because it adversely affects the value of the building. Smith testified that he was unaware an additional tax was levied for the cell site. Tisiot testified that the cell site is a source of income to Plaintiff. Tisiot testified that she valued the cell site separately from the office building.[3]
Smith testified that there is not currently, and has never been, a generator installed on the subject property. He testified that Verizon/RCC Atlantic applied for a permit to install a generator and that Plaintiff gave Verizon/RCC Atlantic an easement, but it was never installed. Tisiot testified that Lutz verified that the generator was completed in late 2008. *Page 6 
 II. ANALYSIS
The issue in this case is the real market value of the subject property for the 2009-10 tax year. Real market value is defined as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205.[4] The assessment date for the 2009-10 tax year was January 1, 2009. ORS 308.007; ORS 308.210. "When the determination of real market value * * * is an issue before the tax court, the court has jurisdiction to determine the real market value * * * on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.
There are three methods used to determine real market value: the cost approach, the income approach, and the sales comparison approach. Allen v. Dept. of Rev. (Allen),17 OTR 248, 252 (2003). All three approaches must be considered, although "it may be that all three approaches cannot be applied" for a particular property. OAR 150-308.205-(A)(2)(a). Storten testified that the income approach was the most appropriate approach to valuation in this case because the subject property is an income-generating, commercial property. Plaintiff provided information only with respect to the income approach. Tisiot testified that she considered both the income approach and sales comparison approach.
"The income method of valuation relies on the assumption that a willing investor will purchase a property for an amount that reflects the future income stream it produces." Allen,17 OTR at 253, citing Union Pacific Railroad v. Dept. ofRev., 315 Or 11, 20, 843 P2d 864 (1992). "A basic requirement of the income method is fixing an annual income to capitalize."Pacific Power Light Co. v. Dept. of Revenue (PacificPower), 286 Or 529, 540, 596 P2d 912 (1979). *Page 7 
The Oregon Supreme Court "decided that the flow of income to be determined is that which `would be anticipated by reasonable, knowledgeable buyers and sellers as of the assessment date,' and that the rate of change of past income should be considered along with the past earning performance of the property."Pacific Power, 286 Or at 541-42, citing Mt.Bachelor v. Dept. of Rev.,273 Or 86, 539 P2d 653 (1975) (emphasis in original).
"The direct capitalization method * * * focuses on two key components: (1) the capitalization rate * * * and (2) net operating income[.]" Allen, 17 OTR at 253. Net operating income "is the currently expected net income of a property after all operating expenses are deducted from gross income."Id. at 254 (citation omitted). "To calculate the [net operating income] appraisers look at historical gross income and expenses for the subject, adjusted by reference to market data."Id. at 254.
Plaintiff here provided an estimate of the value of the subject property using a rough sketch of the direct capitalization method to determine expected future income in this case. Storten testified that, as of December 31, 2008, the subject property's annual income was $96,313 and its total annual expenses were $78,198, resulting in a net operating income of $18,100, rounded. Using a capitalization rate of six percent, Storten testified that the indicated value of the subject property under the income approach is, approximately, $302,000.
Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue,4 OTR 302, 312 (1971). Plaintiff "must establish by competent evidence what the appropriate value of the property was as of the assessment date in question." Woods v. Dept. of Rev.
(Woods), 16 OTR 56, 59 (2002). Plaintiff here did not provide "historical gross income or expenses" for the subject property other *Page 8 
than the total income and expenses as of December 31, 2008. Plaintiff did not provide rental rates for comparable properties. Plaintiff did suggest a capitalization rate, but did not provide comparable sales to support that rate. In short, Plaintiff did not establish by a preponderance of the evidence its requested real market value for the subject property as of January 1, 2009.
Plaintiff argued at trial that the 9 and 3.6 percent increases in the maximum assessed value of the subject property in tax years 2007-08 and 2008-09, respectively, violate the cap on annual maximum assessed value increases greater than three percent. Plaintiff argues that the cell site added in 2007-08 does not constitute an improvement to the subject property and, contrary to Defendant's claim, the generator was never added to the subject property. According to Plaintiff, no improvements were made to the property, thus Defendant had no basis for increasing the maximum assessed value of the subject property by more than three percent in those years.
The maximum assessed value increases in excess of three percent occurred in the 2007-08 and 2008-09 tax years. Plaintiff's appeal concerns only the 2009-10 tax year. ORS 305.275 authorizes a taxpayer aggrieved by an order of the board to appeal the Magistrate Division of the Oregon Tax Court. ORS 305.275(3) states that "[t]he appeal under this section is from an order of the board as a result of the appeal filed under ORS 309.100." The board's order must be appealed to this court "within 30 days after the * * * date of mailing of the order[.]" ORS 305.280(4). In limited circumstances, a taxpayer may appeal the value of its property to this court even though the taxpayer failed to timely appeal to the board.See ORS 305.288. The court's authority to order a change or correction to the value of property under ORS 305.288 extends only to "the current tax year * * * [and] the two tax years immediately preceding the current tax year * * *." When, as here, the property at issue does not involve property used for *Page 9 
residential purposes, the taxpayer must establish that there is "good and sufficient cause * * * for the failure by the * * * taxpayer to pursue the statutory right of appeal." ORS 305.288(3).
Plaintiff here followed the statutory procedures for appealing its 2009-10 property tax assessment. Plaintiff did not follow those procedures with respect to the 2007-08 and 2008-09 tax years. Plaintiff has not alleged "good and sufficient cause" for its failure to appeal the 2007-08 and 2008-09 tax years. The court has no authority to decide Plaintiff's claim concerning the 2007-08 and 2008-09 increases in maximum assessed value in excess of three percent.
 III. CONCLUSION
For the foregoing reasons, the court concludes that Plaintiff did not establish by a preponderance of the evidence its requested real market value for the subject property as of January 1, 2009. Tisiot stated that Defendant would accept a 2009-10 real market value of $1,940,140 for the subject property. However, the evidence presented to the court does not support a 2009-10 real market value of $1,940,140 for the subject property. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.
Dated this day of March 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Pro Tempore Allison R.Boomer on March 25, 2011. The Court filed and entered this documenton March 25, 2011.
[1] Tisiot testified that Defendant cannot provide Lutz's appraisal report to Plaintiff or others who might request it because most of the information contained in the report is confidential.
[2] Tisiot did not submit her appraisal report to the court.
[3] The cell site includes a cellular tower. Tisiot testified that the Department of Revenue is responsible for the assessment of personal property and, therefore, for the assessment of the cellular tower.
[4] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2007. *Page 1