IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| LINDQUIST HOLDINGS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 150239D |
| | ) | |
| v. | ) | |
| | ) | |
| YAMHILL COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

This Final Decision incorporates without change the court's Decision, entered February 18, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals the real market value of property identified as Account 557806 (subject property) for the 2014-2015 tax year. A trial was held in the Oregon Tax Courtroom on December 2, 2015, in Salem, Oregon. Dale Bernards appeared on behalf of Plaintiff. Stuart Lindquist (Lindquist) testified on behalf of Plaintiff. Derrick Wharff (Wharff) appeared on behalf of Defendant. Wharff and Chris Lanegan (Lanegan) testified on behalf of Defendant.

Defendant's Exhibits A through H were received without objection. Plaintiff stated that it intended to rely on documents submitted with its initial complaint. Tax Court Rule-Magistrate Division (TCR-MD) 11 A, specifically states that evidence must be filed with the court and served on the opposing party as an exhibit "even if it was already presented * * * with an earlier pleading * * *." Plaintiff did not submit exhibits as provided by TCR-MD 11 A. As a result no exhibits were received from Plaintiff.

/ / /

/ / /

## I. STATEMENT OF FACTS

The subject property is a commercial building located on NW 13th Street in McMinnville, Oregon, containing a total of 8,742 square feet on the main level and two separate basements consisting of 1,570 and 2,560 square feet. (Def's Ex A at 17.) Lindquist testified he has been a real estate builder/investor for over five decades, and currently makes a living from real estate. Lindquist testified he received an unsolicited call from a real estate agent informing him about the subject property in early 2014. He subsequently purchased the property for $500,000 in June 2014. Lindquist testified that he did not know the seller of the property, Delford "Dale" Smith (Smith), or his financial condition. Lindquist testified that he believed the sale was an arm's-length transaction and the purchase price represented the fair market value of the subject property as of January 1, 2014.

Lindquist testified that he has only recently been able to rent a portion of the building with a gross annual income for the subject property at $21,699. Lindquist testified that the annual rental of the property if fully rented, based on its current rent, would be $4.77 per square-foot. He also testified that based on his personal knowledge the capitalization rate in the area of the subject property is from eight to ten percent. Using the gross annual income, Lindquist testified that the value of the property using an income capitalization approach is $460,000 to $500,000. Lindquist testified that he has seen estimates for replacement costs of the building in the $600,000 range.

Lanegan testified that he has been a real estate appraiser since 1990 and currently works for Defendant. Lanegan inspected the property on July 15, 2015, and prepared an appraisal report of value for the effective date of January 1, 2014. Lanegan considered three approaches to value for the subject property: the sales comparison approach, the income approach, and the cost

approach. (Def's Ex A.) Lanegan testified that the highest and best use of the property is its current use as an office building.

For the sales comparison approach, Lanegan analyzed four comparable sales of nearby commercial buildings in McMinnville. (*Id*. at 20-21.) He gave the most weight to comparable 1 because of its proximity, zoning, and similar construction and age to the subject property. (Def's Ex A at 21.) Based on the sales comparison approach, Lanegan estimated the value of the subject property was $828,280.

For the income capitalization approach, Lanegan used a figure of $1 per square-foot for the main floor consisting of 8742 square feet and $0.10 per square foot for the basements consisting of 4150 square feet. (Def's Ex A at 29.) Lanegan used a capitalization rate of seven percent, an effective tax rate of 8.66 percent; he subtracted 15 percent for vacancy, five percent for management, and 13 percent for expenses, to find a value of $850,377. (*Id*.) Lanegan testified that Lindquist's estimate of annual rental income was too low because his current renter is paying below market value. Lanegan cited the current rental agreement, which states, "Lessor and Lessee agree that the rent payable by Lessee to Lessor was reduced to reflect the anticipated partial exemption of the property from real property taxes and thus is less than the ordinary fair market rent for the premises." (Def's Ex B at 20.)

For the cost approach, Lanegan testified that he used the Marshall & Swift cost program and estimated that the building had depleted 45 percent of its useful life. (Def's Ex A at 31.) Based on that figure, Lanegan estimated the cost of improvements was $648,000, which, when added to the land value, resulted in a total value of $842,000. (*Id*. at 34-35.)

Lanegan testified that he gave more weight to the sales comparison approach, which resulted in his opinion of value at $828,280. He also testified that he did not consider Plaintiff's

purchase of the property an arm's-length transaction. Lanegan noted in the history portion of his summary that the subject property was occupied by Evergreen International Airlines and listed for sale from September 17, 2009, to April 1, 2010, for $1,799,500. (Def's Ex A at 15.) It was relisted for $1,600,000 in June 2010 until January 1, 2011. (*Id*.) In October 2013, the property was listed for sale for $1,000,000 until April 14, 2014. (*Id*.) The property was partitioned and later sold to Plaintiff during a time in which the Multiple Listing Service listing was cancelled. (Def's Ex A at 15.) The sale also occurred at a time when Evergreen Ventures and its owner, Smith, were in financial distress. (*Id*. at 15-16.) Wharff testified that Smith was one of the largest landowners in Yamhill County and his difficult economic circumstances, as well as those of Evergreen Ventures and Evergreen International Airlines, were well known in the community.

Lindquist testified that the original tax assessment valued the property at $1,208,158 and that value was reduced by BOPTA to $723,350. Defendant requested that the court sustain the value as found by BOPTA.

## II. ANALYSIS

The issue before the court is the 2014-15 real market value of the subject property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at \*2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1),[1] which reads:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

/ / /

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to the 2013 edition.

There are three approaches to valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property, even if one of the approaches is found to not be applicable. *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); ORS 308.205(2); OAR 150-308.205-(A)(2)(a).

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. Plaintiff must establish its claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)).

A.      *Comparable Sales Approach*

When determining real market value, a recent, voluntary, arm's-length sale of a property between a willing and knowledgeable buyer and seller can be very persuasive of real market value. *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973); *see also Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 414-15, 521 P2d 324 (1974). The two important considerations are whether or not the sale was "recent" and whether it was "arm's length." *Kem*, 267 Or at 114-15.

Plaintiff relies on its purchase as the sole evidence of value for the sale comparison approach. Plaintiff's purchase in June 2014, was close to the January 1, 2014, assessment date making it a recent sale. The next question is whether the sale was an "arm's length" transaction. At the time of Plaintiff's purchase, the subject property was not listed in the MLS, had been on-and-off the market for five years, and had seen more than a 50 percent reduction in its listing price. While the reduction in listed price alone is not conclusive that the property is subject to

distress, Wharff testified that the financial distresses of Evergreen Aviation, Evergreen International Airlines, and Smith have been widely publicized. Lindquist testified that he was not aware of the circumstances surrounding this property; however, the test to determine an arm's-length transaction is objective and not subjective. The court is persuaded that the subject property was in distress and the sale involved an element of compulsion on the part of the seller; thus the sale was not indicative of an arm's-length transaction.

The Department of Revenue's administrative rules specify that "[w]hen nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition." OAR 150-308.205-(A)(2)(c). Plaintiff did not offer adjustments to the sale price based on the distressed nature of the sale.

Plaintiff's evidence for the comparable sales approach consists of a single, non-arm's-length sale in support of its requested real market value. Plaintiff's evidence is incomplete and inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [its] burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

B.      *Income Capitalization Approach*

"The income method of valuation relies on the assumption that a willing investor will purchase a property for an amount that reflects the future income stream it [will] produce." *Allen v. Dept. of Rev.*, 17 OTR 248, 253 (2003) (citation omitted). "A basic requirement of the income method is fixing an annual income to capitalize." *Pacific Power & Light Co. v. Dept. of Revenue* (*Pacific Power*), 286 Or 529, 540, 596 P2d 912 (1979). The Oregon Supreme Court "decided that the flow of income to be determined is that which 'would be anticipated by reasonable,

knowledgeable buyers and sellers as of the assessment date[.]' " *Pacific Power*, 286 Or at 542, citing *Mt. Bachelor v. Dept. of Rev.*, 273 Or 86, 539 P2d 653 (1975). "The direct capitalization method * * * focuses on two key components: (1) the capitalization rate * * * and (2) net operating income * * *." *Allen*, 17 OTR at 253. Net operating income "is the currently expected net income of a property after all operating expenses are deducted from gross income." *Id.* at 254 (citation omitted). "To calculate the [net operating income], appraisers look at historical gross income and expenses for the subject, adjusted by reference to market data." *Id.*

Plaintiff and Defendant offered differing opinions about the operating income for the subject property. Lindquist testified that since Plaintiff acquired the subject property it has only been partially rented with an annual income of $21,699. Lindquist used this figure to arrive at a value of the subject property from $460,000 to $500,000. Plaintiff's conclusion is not persuasive because its underlying lease assumption were based on a below market rent. Plaintiff offered no adjustments to its calculations to account for the below market rent. Thus, the court finds Plaintiff's valuation using the income approach to be unreliable.

Lanegan testified that the annual gross income should be estimated at $109,884 based on $1.00 per square-foot for the main floor and $0.10 per square-foot for the basement. Using a capitalization rate of seven percent, and adjustments for vacancy, management, and miscellaneous expenses, Lanegan opined that the value of the property using this approach was $850,377. Defendant offered no market evidence for its determination of rental rates. Thus, the court is unable to make a determination of value using Defendant's income approach.

C.     *Cost Approach*

The cost approach involves an estimate of the cost to replace the improvements on property, less its depreciation, plus the land value. The Appraisal of Real Estate 561 (14th ed

2014). Lindquist testified that he "saw" estimates of replacement costs for the improvements on the subject property around $600,000. Plaintiff offered no foundation for its cost figures, and thus the evidence was incomplete.

Lanegan used the Marshall and Swift cost estimator program, found the cost of the improvements new were $1,145,344, applied a 45 percent depreciation rate, and found a value of $648,000 for the improvements. To this, Lanegan added the value of the land and arrived at a value of $842,000. While Defendant's cost approach value appears reasonable, its appraisal acknowledges that this is not the best approach for an older property such as the subject property. The court agrees that the cost approach is not the best measure of value since the subject property is an older property almost halfway through its expected life.

After consideration of the three valuation approaches, the court finds that Plaintiff failed to carry its burden of proof. Even though the burden has not shifted, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Here, Defendant requested that the court sustain the value determined by BOPTA and deny Plaintiff's appeal. The court accepts Defendant's recommendation.

III. CONCLUSION

After careful consideration, the court concludes that Plaintiff failed to carry its burden of proof. Now, therefore,

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of March 2016.

_____
RICHARD DAVIS
MAGISTRATE

***If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.***

***This document was filed and entered on March 14, 2016.***